**UNITED STATES of America, Appellee,**

v.

**Anthony AGILAR, Defendant-Appellant.**

**No. 467, Docket 85–1257.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 18, 1985.

Decided Dec. 11, 1985.

See also, 612 F.Supp. 889.

Louis R. Aidala, New York City, for defendant-appellant.

Peter M. Lieb, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Kenneth Roth, Asst. U.S. Atty., New York City, on brief), for appellee.

Before VAN GRAAFEILAND, NEW-MAN, and MINER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Anthony Agilar appeals from a judgment of the District Court for the Southern District of New York (Robert W. Sweet, Judge) convicting him, after a bench trial, of distributing heroin within 1,000 feet of a public elementary school in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) (1982) and 21 U.S.C.A. § 845a(a) (West Supp. 1985). Appellant primarily challenges the constitutionality of section 845a, the so-called "schoolyard" provision, which increases penalties for distribution of narcotics within 1,000 feet of a public or private elementary or secondary school. We affirm.

The evidence disclosed that Agilar sold three glassine envelopes containing heroin for $30 to Maritza Ortiz, an undercover New York City police officer. Ortiz had first approached Agilar's co-defendant, Edwin Jimenez, at the corner of Second Avenue and 118th Street in Manhattan and asked for heroin, specifically requesting the brand name "Checkmate," which is sold

at that location. Jimenez said, "I will take you to the man." He led Ortiz only 25 feet along 118th Street to a location where Agilar was selling heroin to customers waiting in line. Agilar told Jimenez that Ortiz would have to wait her turn at the end of the line. While she was waiting, Agilar asked her how many glassine envelopes she wanted. She said she wanted three, and he replied, "I am going to take care of you." When Ortiz reached the head of the line, she purchased three envelopes for $30, using money that had been photocopied to record the serial numbers.

Promptly after the sale, Ortiz radioed a backup police officer and gave a description of the seller. The officer arrived on the scene a minute later, arrested Jiminez, and stopped three men, including Agilar, who met the description given by Ortiz. When the three were brought to the undercover officer's presence, she immediately identified Agilar as the seller. Agilar was arrested and searched; he had $140 in cash, but none of the bills that Ortiz had used in the heroin purchase. The evidence also revealed that Agilar, while waiting outside the office of a United States Magistrate the following day, was overheard admonishing Jimenez for bringing an "undercover" to him.

Though the case was developed by New York City police officers, concerns readily visible criminal conduct requiring no special investigatory resources or equipment, and involves a $30 transaction, the matter became the subject of a federal criminal prosecution because it occurred on "federal day," the day of the week when federal law enforcement authorities have decided to convert garden-variety state law drug offenses into federal offenses. Though we are urged in other contexts to tolerate missed deadlines because of the enormous burdens placed upon limited numbers of federal law enforcement personnel, *see, e.g., United States v. Vasquez*, 605 F.2d 1269 (2d Cir.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), on "federal day" there are apparently enough federal prosecutors available with sufficient time to devote to $30 drug cases that have

been developed solely by state law enforcement officers. Be that as it may, the case is lawfully within the jurisdiction of the federal courts and must be decided. It poses issues concerning the constitutionality of the federal "schoolyard" statute because Agilar had the double misfortune to sell to a customer who happened to be an undercover police officer and to make the sale at a location that happened to be within 1,000 feet of a public elementary school.

We have thus far encountered the schoolyard statute on two occasions, ruling in *United States v. Falu*, 776 F.2d 46 (2d Cir.1985), that the statute does not require knowledge of the proximity of a school and in *United States v. Jones*, 779 F.2d 121 (2d Cir. 1985), that the statute does not require evidence that the specific location of the sale, within the 1,000-foot zone, is one where school children are present or likely to congregate. Agilar's constitutional challenge is no more substantial than the statutory arguments rejected in *Falu* and *Jones*.

■ Agilar contends that the statute offends the Due Process Clause by creating an unwarranted irrebuttable presumption that every sale of narcotics within 1,000 feet of a school has the detrimental effects upon school children that Congress sought to avoid by enacting section 845a. The cases condemning irrebuttable presumptions that lack rationality, *e.g., Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *United States Department of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1974), do not require that the means chosen by Congress to deal with a problem score a notable success in every application of the statute. Congress wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools. *See United States v. Nieves*, 608 F.Supp. 1147 (S.D.N.Y.1985). Whether or not each sale within the 1,000-foot zone, if not deterred, would have led to acquisi-

tion of drugs by school children, the proscription of sales within the environs of schools is a rational means of reducing the risk of easy availability that can lead to such acquisition.

Nor is the statute constitutionally vulnerable because of appellant's doubt that the increased penalties will in practice add any incremental deterrence to that arising from the already substantial penalties Congress has provided for selling narcotics. Congress is entitled to add higher penalties in the hope of providing further deterrence, whether or not much success is thereby achieved. Appellant's final due process challenge alleges that the 1,000-foot demarcation line is not sufficiently ascertainable by the average person. Since the statute is violated whether or not the seller knows he is within the prohibited zone, *United States v. Falu, supra*, this argument has no force. And since there is no protected right to sell narcotics anywhere, there need be no concern for the person who removes his selling activity a considerable distance from a school in order to avoid the risk of being within the 1,000-foot zone.

Agilar also challenges section 845a on equal protection grounds on the strained theory that the statute has a disproportionate impact on members of racial minorities, more of whom live, it is asserted, within 1,000 feet of schools than do non-minority residents, a smaller proportion of whom live in densely populated urban areas. The argument fails, among other reasons, for lack of any claim, much less showing, of a discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

Finally, appellant challenges his conviction on the ground that the District Judge, in discussing the evidence, on two occasions noted a "doubt" concerning the probative force of Ortiz's identification testimony. However, Judge Sweet found Agilar guilty and obviously considered the totality of the evidence sufficient to dispel any reasonable doubt. His candor in commenting on the evidence is no basis for rejecting his ultimate assessment of it.

The judgment of the District Court is affirmed.