**The STATE of Utah, Plaintiff and Respondent,**

v.

**Eddie Gus UDELL, Defendant and Appellant.**

**No. 19641.**

Supreme Court of Utah.

Oct. 28, 1986.

D. David Lambert, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant Eddie Gus Udell appeals from his jury conviction of distributing a controlled substance for value in violation of U.C.A., 1953, § 58–37–8(1)(a)(ii). He assails his conviction on two grounds: first, that he adduced evidence at trial that he was entrapped by the police which raised a reasonable doubt of his guilt; second, that the evidence was insufficient to prove that the distribution was "for value."

■ Our standard in reviewing the sufficiency of the evidence is well settled. We review the evidence and all inferences which may be reasonably drawn from it in the light most favorable to the verdict. *State v. Petree*, 659 P.2d 443 (Utah 1983). "When there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the requisite elements of the crime can be reasonably made, our inquiry stops, and we sustain the verdict." *State v. Gehring*, 694 P.2d 599, 600 (Utah 1984).

The Orem City Police Department assigned one of its officers to work undercover with the North Utah County Narcotics Enforcement Team. The undercover officer worked with an informant who introduced him to defendant because the informant knew that defendant had been involved with the illegal use of controlled substances. According to the officer's testimony, he asked defendant to sell him cocaine on four occasions over a forty-day period. On the first three occasions, defendant told the officer that he had none to sell but informed him where he could buy some. On the fourth contact, defendant agreed to sell him cocaine, made arrangements to pick it up, and sold him a gram.

## ENTRAPMENT

■ Defendant contends that the evidence adduced at trial established an entrapment defense, U.C.A., 1953, § 76–2–303, sufficient to raise as a matter of law a reasonable doubt that he freely and voluntarily committed the offense. Several defense witnesses, including defendant, testified that between December 10, 1982, and January 18, 1983, the officer and his informant almost daily requested defendant to supply them with cocaine. Defendant also testified that while he was in the officer's presence, a big tall man named Hyrum threatened him with bodily injury if he did not procure drugs for them.

The testimony of each of the defense witnesses was impeached in several areas, particularly concerning the presence of Hyrum, who supposedly threatened defendant, and the number of requests for cocaine made by the officer. The jury was also free to disbelieve defendant's testimony that the informant made numerous requests for drugs while not accompanied by the officer. When viewed in the light most favorable to the jury's verdict, the evidence established that the officer shared cocaine with the defendant on December 10, 1982, and asked him to obtain cocaine on that same day and again on January 13, 17, and 18, 1983, making four total requests. We recently reversed the convictions in *State v. Sprague*, 680 P.2d 404 (Utah 1984), and *State v. Kourbelas*, 621 P.2d 1238 (Utah 1980), where undercover officers had made

a similar number of requests to purchase controlled substances and the defendants presented entrapment defenses. In *State v. Taylor*, 599 P.2d 496 (Utah 1979), we adopted the objective standard of entrapment which, instead of focusing on the propensities and predisposition of the specific defendant, asks "whether the police conduct ... falls below standards, to which the common feelings respond, for the proper use of governmental power." *Id.* at 500. In formulating this test, we stated in *Taylor*:

> In evaluating the course of conduct between the government representative and the defendant, the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person.

*Id.* at 503 (citation omitted).

In both *Kourbelas* and *Sprague*, the undercover officers had no evidence that the defendants either dealt in or used illicit drugs. We also recognized an entrapment defense in *State v. Soroushirn*, 571 P.2d 1370 (Utah 1977), where an officer had made repeated requests for marijuana from a student who used marijuana. Our action was primarily because the officer had no indication that the student would become involved in the selling of marijuana. However, that is not true in the instant case with Udell. Here, the informant worked with the officer for the express purpose of introducing him to persons involved in the drug underground. The informant introduced him to the defendant specifically because defendant was a known drug user. At the officer's initial contact with defendant on December 10, 1982, defendant declined to sell any cocaine because he did not have any at that time, but told the officer where to buy some. Before the officer left defendant's apartment, he purchased cocaine (possibly from defendant's roommate) and had shared some of it with defendant. When the officer contacted defendant the next time, Jan-

uary 13, 1983, defendant again said that he did not then have any cocaine to sell and again evidenced his involvement in drug trafficking by telling the officer where he could buy some. On January 17, the officer again asked for cocaine and arranged with defendant to return the following day. When the officer returned on the 18th, defendant agreed to sell the officer cocaine, made a phone call to his source, took the officer's money, and told the officer to wait because he needed to drive to Provo to obtain it. Defendant returned some three hours later with the cocaine and gave it to the officer.

In light of the transactions leading up to the offense, the interaction between the officer and the defendant, and the responses to the officer's inducements, we hold that the government's conduct was not improper as a matter of law. Defendant was a known drug user. Each time the officer requested cocaine, defendant did not sell any because he did not have any but told the officer where to obtain some. Significantly, the officer had previously purchased cocaine at defendant's apartment. Under these circumstances, the officer had reason to believe that defendant was involved in drug trafficking. All of these factors indicate that the police conduct was within reasonable bounds under the circumstances. We hold that the evidence, when viewed in a light most favorable to the jury verdict, does not as a matter of law leave a reasonable doubt that defendant was "not otherwise ready to commit" the offense. Thus, the question of entrapment was properly left to the jury.

## DISTRIBUTION "FOR VALUE"

■ Defendant next contends that the distribution was not "for value" and his conviction must be set aside. In *State v. Ontiveros*, 674 P.2d 103 (Utah 1983), the evidence clearly established that Ontiveros, a known drug dealer, was acting merely as the officer's agent in making the purchase from a third party. After several importunings by an undercover officer, Ontiveros "told him he would have to make a

phone call to see if someone else had any marijuana." *Id.* at 104. While in the officer's presence, Ontiveros called and found some, and while on the phone, told the officer that he could get some marijuana at $40 for a half ounce, to which the officer agreed. Both rode in the officer's car with Ontiveros directing the officer to the source. Upon arrival, the officer gave Ontiveros the $40 and Ontiveros left the car, entered a residence, and returned five to ten minutes later with the marijuana. Of particular significance in demonstrating that Ontiveros was acting merely as the officer's agent, Ontiveros asked the officer to sell him some of the marijuana. All of these factors demonstrated that Ontiveros did not distribute for value and we reversed his conviction.

*Ontiveros* is distinguishable in several particulars. Most importantly, Udell himself agreed to sell the cocaine to the officer. He did not merely find and direct the officer to another seller. Defendant left his own apartment and went to a friend's apartment to make the phone call out of the officer's presence. He did not simply make an accommodation call to see if someone else had any. He did not direct the officer to the source and merely carry the money for the officer. Defendant took the officer's $120 and told him to wait at defendant's apartment because it would take about an hour. In actuality, defendant bought gasoline for his car, drove to Provo and back, and spent the remainder of the evening obtaining the cocaine.

Defendant's contention that the distribution was not "for value" because he did not make a profit on the transaction lacks merit. Statutes dealing with the sale and distribution of drugs give these terms broader meaning than their regular commercial sense. *State v. Woods*, 214 Kan. 739, 522 P.2d 967 (1974); *State v. McCullar*, 110 Ariz. 427, 520 P.2d 299 (1974); *see Wright v. State*, 651 P.2d 846 (Alaska App.1982); *see generally* 28 C.J.S. *Drugs and Narcotics Supp.* § 164, 93 A.L.R.2d 1008. We have held that it is irrelevant whether or not a defendant profits from the transaction when arranging a sale, *State v. Harrison*, 601 P.2d 922, 924 (Utah 1979), or transporting a controlled substance. *State v. One 1983 Pontiac*, 717 P.2d 1338 (Utah 1986). An exchange of cash for a controlled substance clearly falls within the broad definition of "distribution for value." Whether the defendant realizes a profit or not is irrelevant.

Defendant's conviction is affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.