STATE of Utah, Plaintiff and Respondent,

v.

Dennis FIXEL, Defendant and Appellant. (Two Cases)

Nos. 860151, 860173.

Supreme Court of Utah.

Oct. 20, 1987.

---

1.  738 P.2d 614 (Utah 1987).

stance for value in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1986) (amended 1987) and distributing a controlled substance for no value in violation of Utah Code Ann. § 58–37–8(1)(c) (1985) (amended 1986; repealed 1987). Because defendant's arguments are the same in both cases, we consolidated his appeals.

On March 5, 1985, Provo City, Utah, Police Officer Guinn, working undercover, purchased marijuana from defendant at defendant's apartment in Pleasant Grove City, Utah. Defendant gave the officer two small bags of marijuana, for which defendant asked and was paid $60. Guinn and a companion [1] also returned to defendant's apartment on March 29, 1985. On that occasion, Guinn gave money to his companion, who entered defendant's apartment and purchased the marijuana. Although Guinn remained outside in his car, he was able to observe this latter transaction through defendant's front window and at trial testified as to his observations. He saw defendant take the money, leave the room, and return with the marijuana. An arrest warrant was later issued, and defendant was arrested and charged twice for distributing a controlled substance for value.

In each bench trial, defendant requested dismissal of the charges, arguing that Guinn acted beyond the scope of his authority by participating in the purchase of marijuana outside of the Provo City jurisdiction, thereby violating Utah Code Ann. § 77–9–3 (1982).[2] Defendant also urged that as a consequence of the officer's noncompliance with the statute, the marijuana was obtained illegally and could

Gregory M. Warner, Salt Lake City, for defendant and appellant.

David L. Wilkinson, David B. Thompson, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Following nonjury trials, defendant was convicted of distributing a controlled sub-

---

1. It appears that the officer's companion arranged the drug sales and was also separately charged for his role therein.

2. Utah Code Ann. § 77–9–3 (1982) provides in part:
(1) Any peace officer duly authorized by any governmental entity of this state may exercise a peace officer's authority beyond the limits of such officer's normal jurisdiction as follows:
(a) When in fresh pursuit of an offender for the purpose of arresting and holding that person in custody ... ;
(b) When a public offense is committed in such officer's presence;
(c) When participating in an investigation of criminal activity which originated in such officer's normal jurisdiction in cooperation with the local authority;
(d) When called to assist peace officers of another jurisdiction.
(2) Any peace officer, prior to taking such authorized action, shall notify and receive approval of the local law enforcement authority, or if such prior contact is not reasonably possible, notify the local law enforcement authority as soon as reasonably possible.

not be admitted into evidence at trial. We note that defendant does not claim entrapment or that his constitutional rights were violated. He also does not contest the legality of his arrest.[3]

Utah Code Ann. § 77-1-3(5)(a)(i) (1982) (repealed 1985) provided:

> Category I peace officers shall have statewide peace officer authority; provided, however, such authority shall extend to other counties, cities, or towns only when the officer acts in accordance with chapter 9 of title 77; provided, however, such limitation shall not apply to any peace officer employed by the state.[4]

Both parties agree that the drug buys were transacted outside of Provo City and that Guinn did not comply with section 77-9-3. However, the State contends that the above-cited statutes do not apply since Guinn acted as a private citizen when he participated in the drug transactions. We are not persuaded.

Subsection 77-1-3(5)(a)(i) and section 77-9-3 do not merely apply to the officially exercised acts of a uniformed police officer, and we cannot interpret those statutes to exclude authorized investigations as the State suggests. Instead, those sections are meant to encompass the total spectrum of a police officer's acts and authority.

In this regard, although neither defendant nor Guinn's companion was aware that Guinn was a policeman, Guinn was discharging the functions of his office, and in doing so, his activities involved the exercise of his official duties and authority. Indeed, the record indicates that Guinn was on duty during the time he participated in at least the first drug transaction. Moreover, Guinn himself testified that on both occasions, he was operating in his official capacity as an undercover police officer assigned to investigate narcotics offenses.

As such, he was conducting an authorized official investigation. He filed reports and apparently advised his supervisor of the two transactions. He also delivered the contraband to a superior at regularly scheduled meetings.

In light of the above, we cannot sanction the State's approach of avoiding the intended statutory proscriptions by conveniently classifying Guinn's investigation as that of a private citizen without the mantle of police authority. We conclude, therefore, that Guinn clearly acted outside the scope of his statutory authority when he conducted the investigations in Pleasant Grove.

■ The next step, then, is to determine the proper remedy for such misconduct. Unfortunately, the legislature has not seen fit to enact any statutory remedy. Nevertheless, defendant argues that since Guinn did not comply with the statutory requirements, the information should have been dismissed or the evidence obtained as a result of Guinn's investigation should have been suppressed. We disagree.

In discussing the violation of a criminal procedure rule concerning searches and seizures, the court in *Commonwealth v. Mason* noted:[5]

> Only a "fundamental" violation of [a rule of criminal procedure] requires automatic suppression, and a violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Where the alleged violation ... is not "fundamental" suppression is required only where:
>
> (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the [r]ule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the [r]ule....[6]

---

3. We acknowledge the distinctions between this case and those involving a warrantless extrajurisdictional arrest by an identified officer. *See* Annot., 34 A.L.R.4th 328 (1984 & Supp.1986).

4. For the current provision containing the "peace officer classification," see Utah Code Ann. § 77-1a-1 (Supp.1987) (effective April 29, 1985).

5. 507 Pa. 396, 490 A.2d 421 (1985).

6. *Id.* at 406, 490 A.2d at 426 (quoting *United States v. Johnson*, 660 F.2d 749, 753 (9th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982) (citations omitted)).

... It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy.[7]

Not only is such standard persuasive to the issue at hand, but defendant herein also makes no claim that Guinn's actions resulted in any constitutional deprivation of his rights.[8] Furthermore, under the circumstances of the cases before us, suppression of the evidence obtained as a result of Guinn's illegal investigation "would be a remedy out of all proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimpaired."[9] We therefore conclude that the "exclusionary rule" under federal constitutional safeguards is not applicable here, and we do not consider it a potential protective measure in the absence of a showing that the conduct of law enforcement was constitutionally or otherwise offensive.[10]

Similarly, as the United States Supreme Court stated in the context of an entrapment issue: "While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed."[11] Defendant does not contend and we do not perceive that Guinn's conduct was in any respect sufficient to preclude the invocation of judicial processes against defendant on the basis of a due process violation.[12] Accordingly, the trial judges appropriately denied defendant's motions to dismiss the charges against him.

Nevertheless, we do not condone the officer's violation of the law or his failure to comply with proper law enforcement procedures, particularly in such a metropolitan area where several municipalities must work together in order to protect the rights of citizens and achieve the purposes of cooperative and effective law enforcement. The officer's conduct may warrant official sanctions, discipline, and/or civil and criminal liability.[13] If so, we are confident the appropriate governmental agencies will take the proper action. But under the facts of these cases and in light of the above analysis, we conclude that the remedy, if any, to which defendant may be entitled does not include suppression of the evidence involved or dismissal of the criminal charges against him.

Defendant also contends that the evidence in both cases is insufficient to support his convictions for distribution of a controlled substance. Specifically, defendant argues that since he merely arranged the sale between the officer and a third

7. *Id.* 507 Pa. at 406–07, 490 A.2d at 426 (emphasis in original).

8. *See People v. Meyer,* 424 Mich. 143, 156, 379 N.W.2d 59, 65 (1985).

9. 507 Pa. at 407, 490 A.2d at 426; *see also United States v. Searp,* 586 F.2d 1117, 1123 (6th Cir. 1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979); *Commonwealth v. Musi,* 486 Pa. 102, 115, 404 A.2d 378, 385 (1979) ("A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence or reflects intolerable government conduct which is widespread and cannot otherwise be controlled.") (citations omitted).

10. *See generally United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (evidence obtained in violation of regulation); *People v. Thiret,* 685 P.2d 193 (Colo.1984) (en banc); *Mason,* 507 Pa. 396, 490 A.2d 421; *Commonwealth v. Saul,* 346 Pa.Super. 155, 499 A.2d 358 (1985), *appeal denied,* (Pa.1986). Defendant does not argue or show that the later arrest failed to satisfy section 77–9–3 or that it was otherwise unlawful. His claim is limited to the officer's conduct in making the drug buys. We reject any suggestion that the buys in this case were the equivalent of an official search by the police.

11. *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (citation omitted).

12. Although relied upon by defendant, the case of *People v. Aldapa,* 17 Cal.App.3d 184, 94 Cal. Rptr. 579 (1971), involved an arrest by police acting outside of their jurisdiction and without any warrant. Such apparently is not the case here. *See supra* note 3.

13. *See Meyer,* 424 Mich. at 161, 379 N.W.2d at 67–68.

party, pursuant to *State v. Ontiveros*, [14] he should only have been charged with arranging drug sales in violation of Utah Code Ann. § 58-37-8(1)(a)(iv) (Supp.1985) (amended 1986; repealed 1987). Although the State responds by arguing that our decision in *Ontiveros* misconstrues the applicable statute, we nevertheless follow our prior interpretation and analysis of the provisions constituting the controlled substance statute.[15]

■ In this regard, Utah Code Ann. § 58-37-2(8) (1986) (amended 1987) provides in part: "The word 'distribute' means to deliver other than by administering or dispensing a controlled substance. 'Distribute for value' means to deliver a controlled substance in exchange for compensation, consideration, or item of value, or a promise therefor." Utah Code Ann. § 58-37-2(6) (1986) (amended 1987) also reads: "The word 'deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." In deciding these cases, it was the prerogative of the trial judges to decide how much weight to give defendant's testimony that he merely acted as an intermediary for the source of the drug. After viewing the evidence in the light most favorable to the court's determination, and in light of the statutory provisions above, we conclude that the evidence was sufficient to support defendant's conviction for distributing a controlled substance for no value.

■ Finally, as to defendant's conviction for distributing a controlled substance for value, the facts are distinguishable from those in *Ontiveros*. Indeed, defendant herein was approached with a request to sell the marijuana to Guinn. Defendant agreed, quoted the selling price, and then personally delivered the contraband and received the money at his apartment. He did not purport to merely find, direct, and introduce the officer to another drug dealer. The trial court was not required to believe

defendant's claim that he did not receive any benefit or keep any of the money he received for making the sale. In any event, we have previously rejected the argument that defendant did not realize a profit on the sale.[16]

The facts in the instant cases do not support a "classic case" of arranging a drug sale. Accordingly, defendant's contentions are without merit and his convictions are affirmed.

STEWART, Associate C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**14.** 674 P.2d 103 (Utah 1983).

**15.** *See State v. Renfro*, 735 P.2d 43 (Utah 1987); *State v. Udell*, 728 P.2d 131 (Utah 1986); *Ontiveros*, 674 P.2d 103; *State v. Hicken*, 659 P.2d 1038 (Utah 1983); *State v. Harrison*, 601 P.2d 922 (Utah 1979).

**16.** *See Udell*, 728 P.2d at 134.