225 N.J. Super. 466 (1988)
542 A.2d 966
STATE OF NEW JERSEY
v.
CARLOS RODRIGUEZ AND CARMEN JIMINEZ, DEFENDANTS.
Superior Court of New Jersey, Law Division, Camden County.
March 25, 1988.
*468 Cheryl Hendler Cohen for plaintiff (Samuel Asbell, Camden County Prosecutor, attorney; Cheryl Hendler Cohen on the brief).
M.W. Pinsky for defendant, Carlos Rodriguez.
*469 John J. Garagozzo for defendant, Carmen Jiminez.
STEINBERG, J.S.C.
Defendants move to dismiss count three of the indictment which charges them with possessing cocaine within 1,000 feet of a school with the intent to distribute that cocaine. Defendants contend that that statute which also provides for enhanced punishment violates both the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution as well as Art. I, par. I of the New Jersey Constitution.
The statute N.J.S. 2C:35-7 provides, in pertinent part, as follows:
Any person who violates subsection (a) of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or a controlled substance analog while on any school property used for school purposes which is owned by an elementary or secondary school or school board or within 1,000 feet of any school property or school bus, ... is guilty of a crime of the third degree and shall, except as provided in N.J.S. 2C:35-12 ... be sentenced by the court to a term of imprisonment ... the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or three years, whichever is greater, during which the defendant shall be ineligible for parole....
The statute, therefore, calls for the imposition of a period of parole ineligibility which shall not be less than three years for any defendant who is convicted of possessing a controlled dangerous substance with the intent to distribute while within 1,000 feet of any school property.
I find the following principles of statutory construction to be pertinent and shall be guided by them in ruling upon defendants' contentions.
First, it is well recognized that courts do not act as a super-legislature. Burton v. Sills, 53 N.J. 86, 95 (1968). A statute is presumed to be constitutional and will not be declared void unless it is clearly repugnant to the constitution. Paul *470 Kimball Hospital v. Brick Township Hospital, 86 N.J. 429, 446-447 (1981).
Therefore, the burden is upon the party challenging the constitutionality of the statute to demonstrate clearly that it violates a constitutional provision. Newark Superior Officers Association v. City of Newark, 98 N.J. 212, 222 (1985).
Defendants contend that the statute violates the Equal Protection Clause in that it unconstitutionally affects their right to live where they please. Federal equal protection analysis traditionally involves different tiers or levels of review. Greenberg v. Kimmelman, 99 N.J. 552, 564 (1985). If a fundamental right or suspect class is involved, the legislative classification is subject to strict scrutiny. To justify the restriction, a state must establish that a compelling state interest supports the classification and that no less restrictive alternative is available. Ibid. With other rights, however, the legislative classification need only be rationally related to a legitimate interest. The standard of review varies, furthermore, with the effect of the governmental regulation upon the affected right. When the effect on a right, even a right that is fundamental, is indirect or insubstantial, the court has applied the rational basis test and upheld a legislative classification. Id. at 565.
I am satisfied that even if the right sought by defendant to be protected is considered to be a fundamental right the effect of the legislation on that right is indirect or insubstantial and I, therefore, conclude that the "rational basis" test should be applied. There is no constitutionally protected right to distribute controlled dangerous substances or to possess controlled dangerous substances with the intent to distribute. Any effect this statute has on one's right to freely choose a residence is most indirect and most insubstantial.
The Comprehensive Drug Reform Act of 1987, N.J.S.A. 2C:35-1 et seq. was enacted as a result of the concern of the Legislature for the crisis affecting this state by virtue of the *471 widespread abuse of controlled dangerous substances. In fact, the Legislature expressly set forth its purpose as follows:
Despite the impressive efforts and gains of our law enforcement agencies, the unlawful use, manufacture and distribution of controlled dangerous substances continues to pose a serious and pervasive threat to the health, safety and welfare of the citizens of this state. New Jersey continues to experience an unacceptably high rate of drug-related crime, and continues to serve as a conduit for the illegal trafficking of drugs to and from other jurisdictions. In addition to the harm suffered by the victims of drug abuse and drug-related crime, the incidence of such offenses are directly related to the rate of other violent and non-violent crimes, including murder, assault, robbery, theft, burglary and organized criminal activities. For this reason, enhanced and coordinated efforts designed specifically to curtail drug-related offenses will lead inexorably to a reduction in the rate of crime generally, and is therefore decidedly in the public interest. [N.J.S.A. 2C:35-1.1(b)]
N.J.S. 2C:35-1.1(c) goes on to provide, in pertinent part, as follows:
... It is also the policy of this state to afford special protection to children from perils of drug trafficking to insure that all schools and areas adjacent to schools are kept free from drug distribution activities and to provide especially stern punishment for those drug offenders who operate on or near schools and buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme....
The Legislature has wide discretion in the creation of recognition of different classes of offenders for separate treatment. In pursuing a legitimate objective it may recognize degrees of harm or possible harm and strike at what it feels more urgently needs repression. If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relationship to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the state's objective: The separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal.
[State v. Smith, 58 N.J. 202, 207 (1971)]
Equal protection does not require that all persons must be treated identically, but rather that similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same. Schneider v. City of East Orange, 196 N.J. Super. 587, 594 (App.Div. 1984). Unless the legislation creates an inherently suspect classification, a legislative classification will be assumed *472 valid, even if it has the effect of treating some differently from others, so long as it bears some rational relationship to a permissible state interest. Ibid.
I am satisfied that N.J.S.A. 2C:35-7 is part of a comprehensive attempt by the Legislature to respond to the widespread problem of drug abuse and constitutes a valid exercise of the police power to impose special enhanced punishment to meet the legitimate public interest in affording special protection to children from the perils of drug trafficking and does not violate the Equal Protection Clause.
Since the act is of recent origin there are no reported opinions in this State regarding the challenged portion of the act. Therefore, I have considered federal cases construing 21 U.S.C.A. § 845(a) which also contains a "school yard" provision which increases penalties for distribution of drugs within 1,000 feet of a public or private elementary or secondary school. In U.S. v. Holland, 810 F.2d 1215 (D.C. Cir.1987) the court held that the "school yard" provision was rationally structured to effectuate the legislative purpose to provide a 1,000-foot zone of protection in favor of school children.
In U.S. v. Agilar, 779 F.2d 123 (2 Cir.1985) the court held that the intent of Congress was to lessen the risk that drugs would be readily available to school children and that it was certainly rational to achieve that goal by increasing penalties for those who sell drugs near schools and that the proscription of sales within the vicinity of schools is a rational means of reducing the risk of easy availability that can lead to acquisition of drugs by school children. Although not required by principles of stare decisis to follow these decisions, I find them most persuasive, and therefore, choose to accept them. I, therefore, find that N.J.S.A. 2C:35-7 is rationally related to a legitimate state interest in protecting school-aged children from the evils of controlled dangerous substances and, therefore, does not offend the Equal Protection Clause of the United States Constitution.
*473 Defendant further contends that the classification is arbitrary in that there is no logical basis for the Legislature's choice to enhance punishment for those distributing narcotics within 1,000 feet of school property and not provide for enhanced punishment for individuals who assault children within a protected zone. Equal protection is not denied because a penal statute might have gone farther than it did or might have included some persons or classes of persons who are excluded. State v. Smith, supra, 58 N.J. at 206. The need for a particular or an additional sanction in one area may appear to the legislative mind in different dimensions and proportions  as more acute in one situation than another. The constitutional requirement of equal protection does not require the Legislature to punish or regulate all persons in precisely the same way or not at all. Id. at 206-207.
Therefore, defendants' argument that the statute denies them equal protection because it does not go far enough must be rejected, since it is reasonably related to a valid legislative goal to deter the distribution of controlled dangerous substances near school property. The Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment. Id. at 207.
Defendants also contend that N.J.S.A. 2C:35-7 denies them equal protection of the law because the enhanced penalties have a greater impact upon drug traffickers in inner-city areas, most of whom are members of racial minorities. It is contended that the inner-city areas are more densely populated and therefore those who live in those areas are more likely to live within 1,000 feet of a school zone. They contend that the statute therefore has a greater impact upon members of racial minorities. Unless it is established that there was a racially discriminatory intent or purpose, the statute does not violate the Equal Protection Clause. U.S. v. Nieves, 608 F. Supp. 1147 (D.C.N.Y. 1985) and U.S. v. Agilar, supra, 779 F.2d at 126. The legislation is neutral on its face and serves legitimate governmental objectives and is therefore not invalid under the Equal Protection *474 Clause merely because it incidentally may affect a greater proportion of one race than another. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).
Insofar as most rights are concerned, a state statute does not violate substantive due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory. Greenberg v. Kimmelman, supra, 99 N.J. at 563. If a statute is supported by a conceivable rational basis it will withstand a substantive due process attack. Ibid. However, where a "fundamental right" is involved the Supreme Court applies a more exacting, although variously expressed, standard. Id. at 564. I am of the opinion that a "fundamental right" is not involved and therefore the legislation will withstand a substantive due process attack since it reasonably relates to a legitimate legislative purpose and is not arbitrary nor discriminatory. For the same reasons that I have found that the statute does not violate equal protection I also find that it is reasonably related to a legitimate legislative purpose and is not arbitrary nor discriminatory. It, therefore, does not violate substantive due process.
Defendants finally contend that the statute violates Art. I, par. I of the New Jersey Constitution, which is a grant of fundamental rights and provides as follows:
All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, or acquiring, possessing and protecting property, and of pursuit and obtaining safety and happiness.
That paragraph does not contain the phrases "equal protection" or "due process." Nevertheless, it has been held to protect against injustice and against the unequal treatment of those who should be treated alike. Greenberg v. Kimmelman, supra, 99 N.J. at 568. In analyzing a claim under the New Jersey Constitution the Supreme Court has employed a balancing test. Id. at 567. In striking the balance, the Court considers the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public *475 need for the restriction. Id. at 567. Any effect the "school yard" provision of the legislation has upon the right of an individual to live where he or she pleases is indirect, unintended and minimal. The public need for the legislation is without question and the balance is most heavily in favor of the means employed by the Legislature. Therefore, the statute does not violate the New Jersey Constitution.
For the reasons set forth above I find that the statute is constitutional and the motion is, therefore, denied.