STATE of Utah, Plaintiff and Appellee,

v.

**Lonnie L. MOORE, Defendant and Appellant.**

No. 870470.

Supreme Court of Utah.

Oct. 25, 1989.

Paul W. Mortensen, Phoenix, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant Lonnie L. Moore appeals from a first degree felony conviction by a jury for distribution of a controlled substance for value within 1,000 feet of a public school in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1986) and was given an enhanced sentence pursuant to Utah

Code Ann. § 58–37–8(5)(a)–(d) (Supp.1986) of not less than five years and which may be for life.[1]

On September 16, 1986, defendant met narcotics and liquor law enforcement agent Don A. Kelley ("agent") in defendant's home in Moab, Utah. Daniel J. Ward ("confidential informant") introduced them and was present. The confidential informant offered to buy narcotics from defendant, and defendant stated that it would cost $275. The agent and the confidential informant paid that amount to him. Three of defendant's friends witnessed the payment. That evening, defendant attempted to purchase from third persons "an eighth of crystal" of methamphetamine for his buyers. Unable to do so, he returned to his home. He next endeavored to purchase cocaine but was unsuccessful. He then suggested and it was agreed that he hold the money overnight and try to purchase methamphetamine the next morning.

Defendant met with the agent and the confidential informant the next day at approximately 2 p.m. at his home, which is in central Moab and is located within 1,000 feet of the Grand County Middle School. His home is 482 feet 7 inches from the middle school on one approach and 568 feet 7 inches on another. Defendant gave the confidential informant a "bindle" (a piece of paper folded in the shape of an envelope) of methamphetamine and requested a "line" (one usage) from the bindle. The confidential informant provided the line. Defendant told them that they could return later and purchase more controlled substances. Subsequently, defendant was charged, tried, and convicted.

On appeal, defendant complains: (1) the trial court committed reversible error in refusing to give his proposed instructions embodying his contention that he distributed drugs without receiving value, a lesser included offense; (2) the court should have found, as a matter of law, that he was entrapped; (3) Utah Code Ann.

§ 58–37–8(5) violates his due process rights guaranteed in the fifth and fourteenth amendments of the United States Constitution and article I, section 7 of the Utah Constitution by imposing an enhanced penalty for violations that take place within 1,000 feet of a school and violates the equal protection clauses of the fourteenth amendment to the United States Constitution and article I, section 24 of the Utah Constitution because of its unequal effect on residents of small towns; and (4) Utah Code Ann. § 58–37–8(5)(d) violates the due process clauses of the United States and Utah Constitutions by precluding the defense of lack of knowledge and by eliminating the *mens rea* requirement as to the proximity of the school and his distribution of narcotics. We shall consider these points *seriatim.*

I

At trial, defendant requested that the following instructions be given defining what is not "distribution for value" within the statute under which he was convicted, section 58–37–8(1)(a)(ii):

### Instruction No. 1

You are instructed that the voluntary sharing of an unlawful substance obtained from a third party by a narcotics officer or agent with a person who has obtained the substance for the officer or agent from the third party does not constitute "distribution for value" within the meaning of the statute.

### Instruction No. 2

You are instructed that before you may find beyond a reasonable doubt that the defendant distributed methamphetamine for value, you must find that the defendant did more than simply make an accommodation call to obtain the methamphetamine on behalf of the narcotics officer or agent.

---

1. This statute was in effect at the time of defendant's illegal distribution of narcotics within 1,000 feet of a public school. The pertinent sections of this statute have been amended.

1986 Utah Laws ch. 196, § 1; 1989 Utah Laws ch. 50, § 2; 1989 Utah Laws ch. 201, § 1. *See* Utah Code Ann. § 58–37–8 (Supp.1989).

These instructions were refused by the trial court.

Defendant also requested that his instruction No. 3 be given which stated, "[I]t is a lesser included offense to the crime included in the information for a person to commit the crime of distribution of a controlled substance without value." This instruction was given in its entirety as the court's instruction No. 6.

The court also instructed the jury as to the definition of "distribute" and "distribute for value." Instruction No. 5 read:

In construing and interpreting these instructions, the following definitions shall apply:
A. "To distribute" means the actual, constructive or attempted transfer of a controlled substance to another person.
B. The meaning of the term "distribute for value" means to deliver a controlled substance in exchange for compensation, consideration, or item of value, or a promise therefor.

While a defendant is entitled to an instruction on his or her theory of the case, *State v. McCumber*, 622 P.2d 353, 359 (Utah 1980), he is not entitled to multiple instructions setting forth the same theory. *State v. Miller*, 727 P.2d 203, 206 (Utah 1986). The court adequately defined distribution for value in instruction No. 5. The court then did not need to define what is *not* value for purposes of the statute since any distribution which did not come within the definition of "for value" would be "without value."

Furthermore, defendant's requested instructions No. 1 and No. 2 were flawed because they were based on the premise that defendant's acceptance of the $275 could not be value if he thereafter paid all of that amount out to buy the drugs for the confidential informant and the agent. We have defined "distribution for value" to include exchange of cash for a controlled substance regardless of whether the defendant realized a profit. *State v. Udell*, 728 P.2d 131, 134 (Utah 1986). In that case, we affirmed the defendant's conviction of distribution of a controlled substance for value. The defendant agreed to sell cocaine to an undercover officer. He took the officer's $120 and told him to wait at the defendant's apartment until he returned. We held that whether the defendant realized a profit or not was irrelevant. *Id.* at 134. Similarly, in the instant case, defendant agreed to purchase narcotics for $275. He received the agent's money, attempted to purchase narcotics several times, and told the agent to wait overnight while defendant retained the money. At trial, he testified that he retained no portion of the $275 upon the purchase and sale and received only a line of the substance as agreed. Defense counsel's motion to dismiss on the basis that defendant did not receive value for himself was denied. The court stated, "I see the record shows he received $275.00 and part of the substance and he was the only one that received it. There's no record that it ever went to anybody else." In accord with our holding in *Udell*, defendant's receipt of $275 satisfies the definition of "distribution for value" regardless of his realization of a profit.

In *State v. Fixel*, 744 P.2d 1366, 1370 (Utah 1987), we held that evidence was sufficient to support the conviction of the defendant for distributing a controlled substance for value where the defendant was approached with a request to sell marijuana to an undercover police officer:

Defendant agreed, quoted the selling price, and then personally delivered the contraband and received the money at his apartment. He did not purport to merely find, direct, and introduce the officer to another drug dealer. The trial court was not required to believe defendant's claim that he did not receive any benefit or keep any of the money he received for making the sale.

*Fixel*, 744 P.2d at 1370. Similarly, the jury here was not required to believe defendant's claim that he did not keep any of the $275 for making the purchase nor that the "line" was not compensation as agreed. Finally, it is clear that defendant's actions involved more than a mere agency relationship and that his receipt of the money and a line constituted value. *See State v. Ontiveros*, 674 P.2d 103 (Utah 1983).

## II

■ Next, defendant contends that the evidence establishes an entrapment defense as a matter of law, based on his alleged friendship with the confidential informant. The jury found that defendant was not entrapped. Utah Code Ann. § 76-2-303(1) (1978) provides:

Entrapment occurs when a law enforcement officer or person directed by or acting in co-operation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

This Court reviews the evidence and all its reasonable inferences drawn from it in the light most favorable to the jury's verdict. *State v. Martin*, 713 P.2d 60, 61 (Utah 1986); *State v. Booker*, 709 P.2d 342, 345 (Utah 1985). We have provided some guidance to determine whether entrapment has occurred:

Extreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money, are examples, depending on an evaluation of circumstances in each case, of what might constitute prohibited police conduct. In evaluating the course of conduct between the government representative and the defendant, the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person.

*State v. Taylor*, 599 P.2d 496, 503 (Utah 1979) (footnote omitted). In *State v. Wright*, 744 P.2d 315, 318–19 (Utah Ct.App. 1987), the court held that the undercover officer's purchase of cocaine and marijuana from the defendant while the officer was accompanied by the stepbrother of another defendant did not capitalize on the special relationship between the stepbrother and the stepsister or constitute entrapment.

In this case, defendant presented evidence that the confidential informant and he were "friends." They had mutual friends and met at local bars. Defendant also claimed to have helped the confidential informant with withdrawal from his drug addictions. The State presented evidence that the confidential informant was present at defendant's home only six or seven times at most and spent one night at defendant's home at a drug party. His contact with defendant consisted of drug purchases, and the confidential informant did not consider himself a "friend."

Regardless of defendant's view of their relationship, friendship alone does not constitute entrapment. Under the *Taylor* standard, there were no pleas of desperation or appeals based primarily on sympathy or close friendship, nor were there offers of inordinate sums of money. The conduct of the confidential informant was proper use of governmental authority. He met with defendant once and waited as defendant voluntarily attempted to obtain narcotics with due haste. He waited as defendant voluntarily tried to obtain cocaine yet a second time. Unable to do so, defendant volunteered to keep the money overnight to make a purchase the next day.

There was a reasonable basis in the evidence upon which jurors could find beyond a reasonable doubt that the crime was a result of defendant's own voluntary desire and intent to commit the crime. The fact that a police informant only afforded him the opportunity to commit it does not amount to entrapment. *See State v. Salmon*, 612 P.2d 366, 369 (Utah 1980).

## III

Defendant contends that Utah Code Ann. § 58-37-8(5)(a)-(d) (Supp.1986) violates his substantive due process rights in arbitrarily and capriciously (1) creating an irrebuttable presumption that children will be witnesses to or victims of drug transactions without regard to the actual presence or absence of children, and (2) subjecting defendant, a resident of a small town, to a

higher risk of increased criminal culpability than the residents of large cities.

### 1

■ A person convicted under subsection (5)(a) of Utah Code Ann. § 58–37–8 is guilty of a first degree felony and shall be imprisoned for an enhanced term.[2]

This Court has upheld the discretion of the legislature to enhance criminal penalties for specific conduct. For example, the habitual criminal statute has consistently survived constitutional challenge. *Cf. State v. Williams*, 773 P.2d 1368, 1374 (Utah 1989); *State v. Johnson*, 771 P.2d 1071, 1074 (Utah 1989); *State v. Stilling*, 770 P.2d 137, 145 (Utah 1989) (the sentence for being a habitual criminal should be merged with the sentence of the underlying substantive offense to create one enhanced sentence); *State v. Bailey*, 712 P.2d 281, 286 (Utah 1986); *State v. Carter*, 578 P.2d 1275, 1277 (Utah 1978). Other statutes enhance penalties for crimes committed while using firearms, *State v. Angus*, 581 P.2d 992 (Utah 1978) (construing Utah Code Ann. § 76–3–203 (1953)); *State v. Speer*, 750 P.2d 186 (Utah 1988) (construing Utah Code Ann. § 76–3–203 (1978)), and for intentional murder, *State v. Bishop*, 753 P.2d 439, 460 (Utah 1988) (construing Utah Code Ann. § 76–3–206 (1978, Supp.1987)), and they have been upheld by this Court.

Defendant contends that the statute arbitrarily and capriciously creates an irrebuttable presumption that children will be witnesses to or victims of drug transactions without regard to the actual presence or absence of children. His claim that his substantive due process rights are violated on this ground is without merit. The statute does not presume the presence of children during a drug transaction, nor does it require it. Instead, the statute envisions the plausible risks to the health and safety of children who may become participants in and victims of drug transactions.

In *United States v. Holland*, 810 F.2d 1215, 1222 (D.C.Cir.), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987), the defendant was convicted of selling controlled substances within 1,000 feet of a public school in the District of Columbia. He challenged the congressional statute on several grounds, one of which was the irrational and irrebutable presumption that the perpetrator is deserving of greater punishment than would ordinarily be tolerated. He assailed the congressional determination that those who sell drugs within 1,000 feet of a school commit a more serious offense and deserve proportionally greater punishment than those who sell drugs outside the 1,000–foot zone. The court held:

It is a matter of universal awareness that when government provides edu-

---

**2.** (5) Prohibited Acts E—Penalties:

(a) Notwithstanding other provisions of this section, a person not authorized under this chapter who commits any act declared to be unlawful under this section, Chapter 37a, Title 58, the Drug Paraphernalia Act, or under Chapter 37b, Title 58, the Imitation Controlled Substances Act, shall, upon conviction, be subjected to the penalties and classifications set forth in Subsection (5)(b) if the act is committed:

(i) in a public or private elementary or secondary school;

(ii) or on the grounds of such a school;

(iii) in those portions of any building, park, stadium, or other structure or grounds which are, at the time of the act, being used for an activity sponsored by or through such a school;

(iv) within one thousand feet of any structure, facility, or grounds included in Subsection (5)(a)(i), (ii), (iii); or

(v) with a person under 18 years of age regardless of where the act occurs.

(b) A person convicted under this Subsection (5) is guilty of a first degree felony and shall be imprisoned for a term of not less than five years if the penalty that would otherwise have been established but for this Subsection (5) would have been a first degree felony. Imposition or execution of the sentence shall not be suspended, nor shall the person be eligible for parole until the minimum term of imprisonment under this subsection has been served.

. . . .

(d) It is not a defense to a prosecution under this subsection that the actor mistakenly believed the individual to be 18 years of age or older at the time of the offense, or was unaware of the individual's true age; nor that the actor mistakenly believed that the location where the act occurred was not as described in Subsection (5)(a) or was unaware that the location where the act occurred was as described in Subsection (5)(a).

cational facilities for children away from their homes it assumes a parental responsibility to furnish them an educational environment as free from crime as reasonably it can make it. Its protection of them is most needed within the school and its proximate surroundings. And it is a matter of general understanding that in our average cities and villages controlled zones around public structures usually extend 1000 feet. Absent an equal protection problem, the punishment allowed by [the statute] is to be reviewed under and is well within the broad, though not unlimited, discretion of Congress under the Eighth Amendment to fix the degree of punishment in proportion to this particular crime.

*United States v. Holland,* 810 F.2d at 1222 (citation omitted).

In the instant case, under the police power, the state legislature has taken measures to protect the public health, safety, and welfare of children of Utah from the presumed extreme potential danger created when drug transactions occur on or near a school ground. *See also United States v. Agilar,* 779 F.2d 123, 125 (2d Cir.1985), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986) (the proscription of sales within the environs of schools is a rational means of reducing the risk of easy availability that can lead to acquisition by children); *United States v. Cunningham,* 615 F.Supp. 519, 520–21 (S.D.N.Y.1985) (statute does not require *direct* endangerment of children); *United States v. Nieves,* 608 F.Supp. 1147, 1149 (S.D.N.Y.1985) (statute creates a *valid* irrebuttable presumption that drug offenses within 1,000 feet of a school endanger school children).

2

■ Defendant's contention that the statute violates equal protection because it treats drug dealers in small towns differently from those in large cities is without merit. A fundamental principle of both state and federal equal protection provisions is that the law should treat persons who are similarly situated in a similar fashion and persons who are dissimilarly situated should be treated dissimilarly. *E.g.,*

*McLaughlin v. Florida,* 379 U.S. 184, 189–90, 85 S.Ct. 283, 287, 13 L.Ed.2d 222, 226–27 (1964); *United States v. Burnison,* 339 U.S. 87, 95, 70 S.Ct. 503, 507–08, 94 L.Ed. 675, 682 (1950); *Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984); *Baker v. Matheson,* 607 P.2d 233, 243 (Utah 1979).

All defendants state-wide who distribute a controlled substance for value within 1,000 feet of a public school are governed by this statute and susceptible to its enhanced penalties. Defendant cannot argue that he is treated any differently than any other similarly situated individual who deals drugs within the proscribed location. He resides in a small city. Consequently, the school yard may be more readily located within 1,000 feet of his residence and his drug-dealing activities than is the case with drug dealers in larger cities. However, this increased proximity does not make defendant dissimilar and therefore entitle him to dissimilar treatment. Clearly, he could have distributed controlled substances outside the defined school zone, whether in Moab or the unincorporated area outside its limits. Further, defendant has not shown that a similarly situated drug dealer in Moab has been treated dissimilarly to defendant. The "bright line test" is based strictly on distance from the school, regardless of the town's population or configuration. Such a test is constitutional. *See State v. Ogar,* 229 N.J.Super. 459, 551 A.2d 1037, 1042 (1989).

The standard of review in this case requires only a rational basis. *State v. Bishop,* 717 P.2d 261, 266 (Utah 1986); *United States v. Holland,* 810 F.2d at 1219; *State v. Brown,* 227 N.J.Super. 429, 547 A.2d 743, 747 (1988); *State v. Rodriguez,* 225 N.J.Super. 466, 542 A.2d 966, 967–68 (1988). The statute is rationally related to the legitimate governmental interest of protecting its minors from drug-related activity and drug use. The profound harm to the minds and bodies of young people which results from drug related activity, and not incidentally criminal activity, should be adequately prevented. The presumed potential risk that children could become customers or suppliers is a sufficient ground alone

to rationally support the legislation. Further, defendant's contention that this legislation discriminates against small-town drug dealers is disingenuous: providing greater leeway to the small-town drug dealer would in turn provide greater risk to small-town children. This Court cannot rule that children in the city of Moab should be less protected than children in a larger Utah city. Thus, the rational basis for this statute passes muster state-wide.

### IV

■ Defendant's last contention, that Utah Code Ann. § 58–37–8(5)(d) violates his due process rights because it precludes the defense of lack of knowledge about the proximity of the school, is also without merit. The statute provides for strict criminal liability:

> (d) It is not a defense to a prosecution under this subsection that the actor mistakenly believed ... that the location where the act occurred was not as described in subsection (5)(a) or was unaware that the location where the act occurred was as described in subsection (5)(a).

The fact that defendant may not have known of the enhanced penalty for distributing controlled substances for value within 1,000 feet of the Grand County Middle School or may not have known of the proximity of his domicile to the school is not a defense.

Cases dealing with convictions of selling drugs under 21 U.S.C.A. § 845a have held that dispensing with the requirement of *mens rea* was not a violation of due process. The federal statute is comparable to Utah's statute. In *United States v. Holland,* 810 F.2d 1215, 1222 (D.C.Cir.), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987), the court upheld a statute imposing enhanced punishment upon those convicted of distributing controlled substances within 1,000 feet of a school. The defendant argued that the statute violated due process because it provided enhanced punishment for acts without regard to whether or not the actor "knew or had a reasonable probability of knowing that such acts affected culpability." The court held that the defendant's lack of knowledge of the statute itself and lack of knowledge of proximity to the school was not an excuse for criminal conduct:

> It is easily concluded here that Congress' heightened interest in protecting children from both the indirect and the direct perils of drug traffic *amply supports its decision not to require a showing of mens rea of the proximity of a school.* A reasonable person would know that drug trafficking is subject to stringent public regulation because it can seriously threaten the community's health and safety, particularly as it relates to the community's heightened concern for the health, safety and welfare of its children. And because knowledge of [the statute] is presumed in law, it is reasonable for Congress to have expected drug traffickers to ascertain their proximity to schools and remove their operations from these areas or assume the risk for their failure to do so.

*United States v. Holland,* 810 F.2d at 1223–24 (emphasis added); *see also United States v. Ofarril,* 779 F.2d 791, 792 (2d Cir.1985) (per curiam), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986); *United States v. Falu,* 776 F.2d 46, 50 (2d Cir.1985); *see also State v. Brown,* 227 N.J.Super. 429, 547 A.2d 743, 747 (1988) (state legislature had a legitimate and reasonable basis for the termination of *mens rea* about the school's proximity to achieve its protective purpose to shield school children from the violent and dangerous narcotic criminal milieu); *State v. Morales,* 224 N.J.Super. 72, 539 A.2d 769, 776 (1987) (statute which prohibited possession of controlled substances within 1,000 feet of school property did not violate due process rights, despite the fact that the law did not require knowledge of proximity of school).

In the past, Congress has rendered criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety. *Liparota v. United States,* 471 U.S. 419, 433,

105 S.Ct. 2084, 2092, 85 L.Ed.2d 434, 444–45 (1985); *see also United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). Further, punishment of a person for a crime when ignorant of the facts making it so does not involve a denial of due process. The narrow exception to this rule is found where legislation criminalized "wholly passive" conduct by a person who is "unaware of any wrongdoing." *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228, 231 (1957). Defendant's actions in the instant case were far from "passive."

In Utah, criminal responsibility attaches when a person acts "intentionally, knowingly, recklessly, with criminal negligence, or with a mental state otherwise specified in the statute defining the offense, as the definition of the offense requires...." Utah Code Ann. § 76-2-101(1) (Supp.1989). The law does *not* require that *each element* of the offense include a corresponding culpable mental state. Interestingly, the former Utah statute defining criminal responsibility required just that. *See* Utah Code Ann. § 76-2-101(1) (1978). The statute was amended in 1983, eliminating the requirement. *Compare* Utah Code Ann. § 76-2-101(1) (1978) *with* Utah Code Ann. § 76-2-101(1) (Supp.1989). Rarely will the courts disturb the political branches' definition of the elements of a crime. *United States v. Brewer,* 841 F.2d 667, 675 (6th Cir.1988). "[I]n determining what facts must be proved beyond a reasonable doubt, the state legislature's definition of the elements of the offense is usually dispositive." *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67, 75 (1986); *see also Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

In the instant case, section 58-37-8(1)(a)(ii) defines the offense for which defendant was charged, requiring that the conduct be an intentional and knowing possession and distribution of a controlled substance. Section 58-37-8(5) merely enhances the penalty when an aggravating factor is present. Utah law does not require that the aggravating element be accompanied by a *mens rea.* Therefore, section 58-37-8(5)(d), which eliminates lack of knowledge about the aggravating factor's presence as a defense for the enhanced penalty, does not violate due process.

Affirmed.

HALL, C.J., concurs.

ZIMMERMAN, Justice: (concurring and dissenting).

I concur in parts II, III, and IV of Justice Howe's opinion. I concur in the result in part I, but do not join in some portions of part I.[1]

■ Part I of the majority opinion addresses the failure of the trial judge to give defendant's two requested instructions on what the terms "distribute" and "distribute for value" mean, concluding that the trial judge adequately instructed the jury on the substance of defendant's theory when it informed the jury that "distribution ... without value" was a lesser included offense. The majority then states that to give the requested definitional instructions would be duplicative. I disagree. In my view, once the trial judge told the jury that it had a choice of convicting defendant of "distribution for value" and "distribution ... without value," it quite properly should have informed the jury of the meaning of those terms. It was error to reject the proposed instructions.

■ I do not conclude, however, that this error requires reversal. The instructions offered by defendant did little more than give common sense explanations for the terms "distribute" and "for value." Nothing contained in those instructions was controversial, and defendant has not suggested that the prosecution's argument led the jury to believe that these terms meant any-

---

**1.** Because a majority of the Court concurs with this opinion, it represents the decision of the Court for those issues it addresses.

thing other than what was in the offered instructions. Therefore, I conclude that the refusal to give the instructions was harmless error and not an abuse of discretion. *See State v. Larson*, 775 P.2d 415, 419 (Utah 1989).

 My point of departure from the majority is its suggestion that the trial court *could not* have given the two requested instructions. The majority seems to say that under our decision in *State v. Udell*, 728 P.2d 131, 134 (Utah 1986), a defendant cannot defend against a distribution-for-value charge by showing that all of the money given to him or her was turned over to another for drugs that were then given to the purchaser. That is not the holding of *Udell*. There, the defendant was attempting to bring himself under the holding of *State v. Ontiveros*, 674 P.2d 103 (Utah 1983), where we held that there was not sufficient evidence to support a conviction for distributing for value, but that the evidence did show an "arranging" a distribution for value. 674 P.2d at 104. The facts in *Udell* were quite different from those in *Ontiveros*, and we simply held that in *Udell*, there was sufficient evidence to sustain the jury's verdict that Udell did distribute for value when he acted as the seller, took a sum of money from the purchaser, bought some gasoline out of that money, and later returned with drugs, when there was no uncontested evidence that he paid the same amount for the drugs as he charged the purchaser.

Accordingly, under *Udell* and *Ontiveros*, as well as *State v. Fixel*, 744 P.2d 1366 (Utah 1987), also cited by the majority, a defendant seeking to avoid conviction on a distribution-for-value charge by showing that he or she is guilty only of the lesser included arranging charge quite properly can argue to the jury that one of the things that makes the crime an arranging and not a distribution for value is that the defendant turned all the money over to another for the drugs, something the evidence did not compellingly show in *Udell*. Because this is true, it is certainly not error for a trial judge to so instruct a jury.

STEWART and DURHAM, JJ., concur in the concurring and dissenting opinion of ZIMMERMAN, J.