182 N.J. Super. 586 (1982)
442 A.2d 1056
MARGARET BURSTEIN, PLAINTIFF-RESPONDENT,
v.
DAVID BURSTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1982.
Decided February 3, 1982.
*589 Before Judges MATTHEWS, PRESSLER and PETRELLA.
J. Mortimer Rubenstein argued the cause for appellant (Rubenstein & Sherwood, attorneys; Jay Rubenstein on the brief).
Joseph Russo argued the cause for respondent (Arthur Uscher attorney).
The opinion of the court was delivered by PRESSLER, J.A.D.
*590 This is a post-judgment matrimonial controversy. By way of a consolidated appeal, defendant-husband David Burstein challenges two orders of the Chancery Division. The first granted the motion of plaintiff-wife Margaret Burstein for enforcement of an "arrearages" judgment in an amount in excess of $60,000 and denied defendant's motion to modify or vacate the judgment. The second ordered a wage execution against defendant in the amount of 55% of his disposable weekly earnings in satisfaction of that judgment.
The parties were divorced in 1975 by a judgment entered in New York, which incorporated the parties' agreement as to the financial consequences of the termination of their marriage. Defendant agreed to pay plaintiff alimony in the sum of $120 a week, to maintain medical and hospital care coverage for her and to pay those of her medical and hospital expenses not covered, to maintain an insurance policy on his life designating her as irrevocable beneficiary, to pay all federal and state income taxes on all payments made by him to her, and to pay for the maintenance of her automobile. With respect to the marital residence owned by them jointly, defendant agreed to convey his interest therein to plaintiff subject to the existing mortgage thereon held by his parents. He also agreed to pay all expenses therefor, including mortgage payments, taxes, insurance, utility costs and maintenance charges.
Following the entry of the divorce, defendant, a retailer, apparently suffered business reverses. In 1976 he liquidated his New York business and purchased a similar business in Hackensack, New Jersey. That business did not do well, and defendant asserts that his income dropped from $40,000 a year when the divorce was entered to about $19,000. In 1979 he attempted to borrow $75,000 from his father to buy another store in Bayonne. It is his further assertion that instead of lending him the money, his father himself purchased the store and hired defendant to operate it at a gross weekly salary of $350. Needless to say, *591 during this entire period defendant fell in arrears in respect of his support obligations and, ultimately, plaintiff lost the marital residence, having to sell it to avoid foreclosure.
By reason of defendant's default in his obligations, plaintiff filed an action in the New Jersey Superior Court for enforcement of the New York judgment, defendant having removed his residence to this State. A plenary hearing was held in 1979 not only as to plaintiff's right to enforcement of the judgment but also as to the allegation of defendant's counterclaim contending that the original agreement was entered into by him under duress, but that even if the agreement were enforceable, it should be modified by reason of his changed circumstances.[1]
Following the hearing, a judgment was entered on August 1, 1979 affirming the validity of the agreement and fixing arrearages on the alimony and automobile payments in the amount of $8,903. The judgment further awarded plaintiff the sum of $54,480, representing her losses resulting from the sale of the marital residence. That sum consisted of $34,000 due to the mortgagee, $6,600 for real estate broker commissions, $3,263.49 for unpaid taxes, $200 for an exterminator's bill, $4,251.46 paid to plaintiff's brother-in-law "as a result of the foreclosure," and $6,150 for attorney's fees in defending the foreclosure action. Plaintiff's attorney was also allowed a fee for the enforcement action, to be paid by defendant. The judgment also reaffirmed defendant's obligations in respect of continuing alimony of $120 weekly and payment of medical and hospital expenses and life insurance premiums. It relieved him, however, of any further obligation for plaintiff's automobile expenses and for her federal and state income taxes. No appeal was taken from this judgment.
*592 Defendant continued to default both as to past and current obligations adjudicated by the August 1979 order, and plaintiff accordingly moved for enforcement thereof. Defendant crossmoved for its vacation or modification. A hearing was held and the consequent order entered in October 1980 is the first of the orders here appealed from. That order, in accordance with the judge's letter opinion, confirmed the August 1979 judgment in all respects. It was the trial judge's view that there was an inadequate showing made to warrant relief from the "arrearages" portion of the judgment pursuant to R. 4:50-1, particularly in view of defendant's failure to have appealed therefrom, and further, that there was no change in defendant's circumstances since the August 1979 order had been entered.
In view of defendant's continued failure of compliance, plaintiff sought further relief by way of an application for a wage execution. That application was granted by an order entered on December 12, 1980, directing the issuance of a 55% wage execution to satisfy the "arrearages" fixed by the August 1979 judgment, totaling $63,383.95. This is the second order here appealed from.
We are satisfied from our review of the record that the order of October 2, 1980, which essentially confirmed the judgment of August 1979, must be affirmed. There was clearly an insufficient showing before the court of any material change in defendant's circumstances during the intervening period as would warrant relief from the continuing support provisions of the August 1979 judgment, and no showing at all implicating any basis of relief under R. 4:50-1 from the arrearages portion. Defendant, having opted not to appeal from the August 1979 judgment, was evidently attempting to use the subsequent enforcement proceeding which led to the October 1980 order as an alternative appeal vehicle. This is plainly impermissible and subversive of the jurisprudence and purpose of the post-judgment motion practice in matrimonial actions.
*593 In challenging the wage execution order, defendant argues that it was in contravention of applicable statutory law as well as an abuse of discretion. We address, first, the illegality argument. Initial recourse must be first made to controlling federal legislation. 15 U.S.C.A. § 1673(a) places a general ceiling on the amount of disposable earnings subject to garnishment, namely, the lesser of either 25% of weekly disposable earnings or the amount by which weekly disposable earnings exceed 30 times the federal minimum hourly wage. This general ceiling is, however, subject to specified exceptions, one of which is garnishment for enforcement of support orders. Thus, in relevant part, 15 U.S.C.A. § 1673(b) provides that
(1) The restrictions of subsection (a) do not apply in the case of 
(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.
........
(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed 
(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;
except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (A)(B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.
(c) No court of the United States or any State (or officer or agency thereof), may make, execute or enforce any order or process in violation of this section.
15 U.S.C.A. § 1673(c) provides for the binding effect of these provisions on state courts.
The implementing New Jersey legislation is N.J.S.A. 2A:17-56.1, which provides that

*594 In any proceeding brought for failure to make support and maintenance payments, upon a showing that such payments are more than 45 days overdue, the court may grant an order directing that an execution issue against the wages, debts, earnings, salary, income from trust funds, or profits of the defendant for the full amount of both the arrears payments and for the satisfaction of current support and maintenance payments notwithstanding any statutory limitation on executions issued against the wages, earnings, salary or other income of the judgment debtor and such execution shall have priority over any other executions.
And see R. 4:59-1(d).
It is, of course, clear that the 55% limitation of 15 U.S.C.A. § 1673(b) is applicable to a wage execution ordered under the state statute. There are, however, questions as to the nature of the order or judgment which is encompassed both by the federal legislation and, to the extent not inconsistent therewith, the state legislation.
First, we are aware, as defendant points out, that the exception of 15 U.S.C.A. § 1673(b) applies to an order for support "which is subject to judicial review." We do not, however, agree that this definition excludes a judgment fixing arrearages on a reviewable support order. In our view, it would be patently illogical to deprive a reviewable support order, except prospectively, of the enhanced garnishment provision of the federal statute merely because arrearages thereon have been fixed by a final judgment. Clearly, an original order for support does not lose its original character simply because the obliged party has failed to comply with it or because the monetary extent of noncompliance has been reduced to a final and executable judgment. Our sister states that have considered the question have indeed so held. See V---- v. S----, 579 S.W.2d 149 (Mo. App.Ct. 1979); Brown v. Tubbs, 582 P.2d 1165 (Kan. App.Ct. 1978). And see Pellerin v. Pellerin, 259 Ark. 546, 534 S.W.2d 767 (1976). Thus, we hold that the authority of N.J.S.A. 2A:17-56.1 for the issuance of a wage execution for both arrears and current support payments is fully encompassed by and consistent with the 55% limitation of the federal statute.
*595 We are, however, satisfied that where there is noncompliance both with current support payments and arrears payments, the 55% maximum wage execution must cover both. The federal legislation, in our view, is not reasonably construable as subjecting the obligor's wages to a 55% garnishment for arrears, leaving him liable to pay, in addition thereto, current support out of the balance of his wages. We note, further, that the state statute refers to execution for the full amount of both arrears and current payments. We are, therefore, of the view that in the face of a continuing noncompliance with both a current order and an arrears payment order, the wage execution, up to a permissible maximum of 55% must cover both. Current support should be paid first and, if there is a difference remaining between current support and garnishable wages, the difference may be allocated to arrearages. Where the obligor has other assets which may be the subject of execution, clearly such execution may proceed simultaneously with a wage execution in order to obtain satisfaction of both the past and current obligation. But where a wage execution alone is available, it may not issue for arrearages alone where current support must be paid. To the extent, therefore, that the garnishment here was entirely for satisfaction of arrearages, the order of execution must be modified.
There is yet another problem with the wage execution here, and that is whether the entire amount of the "arrearage" portion of the 1979 judgment is properly regardable as support arrears. Clearly, the alimony and car payment arrears were attributable to the support obligation fixed by the original judgment. The question is whether the full amount awarded plaintiff for loss of the marital residence may also be so regarded. Defendant, as noted, had been ordered to pay plaintiff the principal and interest of the mortgage as due, taxes and maintenance on the house. It has heretofore been held that an obligation to pay mortgage payments comes within the broad definition of support. See Ballard v. Ballard, 164 N.J. Super. 560, 561 (Ch.Div. 1978). We agree and conclude that other *596 recurring home ownership expenses, including real estate taxes and maintenance, come within that category as well. See Smith v. Smith, 72 N.J. 350, 355, 358 (1977), noting that an agreement requiring the husband to pay the wife's rent, automobile expenses and medical bills, constituted a support agreement. And see Mendell v. Mendell, 162 N.J. Super. 469 (App.Div. 1978). We are, therefore, satisfied that the provisions of the August 1979 judgment fixing defendant's obligation for back taxes and for the exterminator's bills are regardable as support arrearages. We reach the same conclusion as to the provision fixing the mortgage principal paid by plaintiff to the mortgagee, her father-in-law. That the mortgage was required to be prepaid by plaintiff in order to avoid the more substantial loss she would have incurred had there been a foreclosure judgment does not alter the fundamental fact that payment of the mortgage, albeit on a contemplated periodic basis, was defendant's obligation and, moreover, an obligation classifiable as support. We see no reason in law or logic why that character should change by reason of his noncompliance.
The other sums arising out of the house transaction awarded to plaintiff by the August 1979 judgment are not, however, fairly regardable as support but rather as consequential damages sustained by her as a result of defendant's noncompliance with his obligations. She is clearly entitled to the benefit of the judgment awarding those damages to her. That portion of the judgment may not, however, be satisfied by way of execution techniques exclusively available for support orders. The amount of the arrearage judgment which may be so satisfied must be reduced by the amounts awarded for all "house" items except the mortgage principal, back taxes and the exterminator's bill. By our calculation, these three items total $37,463.49. The alimony and car-payment arrearages totaled, as noted, $8,903. Thus, the total amount of the August 1979 judgment which may be regarded as support for wage execution *597 purposes is $46,366.49. The order below must be modified to so reflect.
The final issue before us is defendant's assertion that in view of his $350 weekly income, the 55% garnishment for arrears alone was patently excessive and an abuse of discretion since it left him only about $150 a week to pay his current support obligation to plaintiff and to support himself and his family.
The impact of the 55% garnishment is obviously substantially affected by our holding herein requiring that it extend both to the current and the past support obligations. Whether, even with that amelioration, the percentage of garnishment is so excessive as to constitute an abuse of discretion is arguable. We do not, however, address that question now. It is evident that throughout these proceedings there has been an undercurrent of assumption that defendant may have misrepresented his total financial picture and, more particularly, that he is in fact not an employee, but rather the actual owner, of the Bayonne business heretofore referred to. If this is so, then the misrepresentation was obviously intended to defraud both plaintiff and the courts of this State. We were advised at oral argument that a hearing is scheduled for the near future in the Chancery Division on the question of defendant's true financial status. We were further advised that the execution order here appealed has not been enforced since its entry. In our view, therefore, it would be most expeditious in the interests of the parties to stay the execution order pending disposition of the scheduled hearing and for the trial court to then fix and determine all arrearages which have accumulated since the last fixing of arrearages. Upon his determination of defendant's actual financial status, the trial judge, on specific findings of fact and subject to the holdings herein, shall then amend, modify or otherwise rule in respect of the execution order.
The orders appealed from are modified and stayed in conformance herewith, and we remand for further proceedings consistent with this opinion.
NOTES
[1] Neither the parties nor the trial judges raised any question as to the jurisdiction of the New Jersey courts to enforce or modify a New York support judgment. We consequently opt to consider this matter on its merits without addressing the jurisdictional question. See Borys v. Borys, 76 N.J. 103 (1978).