282 N.J. Super. 332 (1995)
660 A.2d 13
LEONARD MARTINEZ, PLAINTIFF,
v.
ANNA MARTINEZ, DEFENDANT.
Superior Court of New Jersey, Chancery Division Gloucester County.
Decided February 21, 1995.
*337 Leonard Martinez, plaintiff, pro se.
Scott C. Bushelli, for defendant (Dughi and Hewit, attorneys).

OPINION
HERMAN, J.S.C.
In this extended post-judgment application, defendant, Leonard Martinez, an employee of the United States Air Force, seeks reduction of his child support obligation currently enforced by wage garnishment. He asserts he is entitled to such relief because he has demonstrated changed circumstances as father of a recently-born child of his current marriage entitled to his support too, whose frail health has caused unanticipated, substantial, ongoing outlay of funds. Further, plaintiff asserts that since 15 U.S.C.A. § 1673 compels an automatic garnishment reduction from sixty percent to fifty percent of his wages to afford a measure of support for his new family,[1] as a matter of law this court must adjust his current obligation, and cannot impose an order that exceeds that new, lower percentage, even if his child support as calculated pursuant to New Jersey Guidelines for his prior two children so warrants.

I.
Plaintiff/father and defendant/mother were divorced in 1993. She continues to reside in New Jersey. He is in Delaware; he has remarried. Defendant is the residential custodial parent of their two children, a daughter age 11, a son age 9. Previous orders set weekly child support at $150, $40 for day care, and $10 on arrears.
*338 On August 24, 1994, the court held a probation review of plaintiff's account. At that hearing, plaintiff also sought a support decrease because of the August 1 birth of his son. Advised his request would be considered upon the filing of motion and supporting certification, he immediately did so. She responded. The parties appeared on September 30, 1994. Plaintiff's net income was computed at $460 per week. The court, as required, used all plaintiff's income sources: his monthly wages, which are taxed; his annual allotment adjustments, BAQ (Base Allowance for Quarters), BAS (Basic Allowance Assistance) and VHA (Variable Housing Allowance), which are not taxed. For garnishment purposes, allotment payments are not includable as part of "disposable income."[2]
Determining a modification was warranted, the court entered an interim order reducing plaintiff's weekly support obligation by $30, decreased his day care contribution by $12.50, maintained the $10 per week arrearage payment, thereby adjusting the prior orders to $157.50. Following the September motion, the Air Force modified the original percentage of garnishment from sixty percent to fifty-five percent (50% plus 5% since arrears also existed; see n. 1). Calculating plaintiff's disposable income at $1212.04, the Air Force commenced to withhold $682.50 per month from his base net wage leaving a shortfall of $12.61 per week, a sum not collected by garnishment since that sum exceeded the fifty-five percent federal calculation. Discussion as to how and if that deficiency could be collected by other legal process was held in abeyance to allow the parties an opportunity for further input. *339 Thereafter, defendant obtained counsel, petitioned for accelerated collection of arrearages and for reconsideration of other issues, including the pending modification award based on new, updated income information not previously before the court; the plaintiff cross-filed, alleging special hardship and a right to arrearage abatement. As of February 3, 1995 a hearing on all issues has now been held, the court making the following additional findings relevant to adjudication:
1. The testimony of Janice Coble, Gloucester County Probation Officer, established arrears as of August 4, 1994 at $2,467. She awaits a final court order, at which time she will post additional debits and credits to plaintiff's account.
2. For the year 1994, plaintiff's actual net income was $514; for 1995, $528. Defendant's net income remained at $360 for each year.
3. Defendant's total weekly child care costs had been reduced to $30.
4. The new infant still suffers from a debilitating physical condition, gastro esophagal reflux, which to date has resulted in more than $6000 in uninsured medical and hospital expenses. The child's condition requires 24-hour a day parental monitoring to guard against the child's choking on his own vomit. Likewise, plaintiff's second family continues to struggle with weekly, $30-plus, out-of-pocket pharmacy and medical bills. While defendant, too, has incurred added unexpected monthly medical/pharmacy costs of $20 related to one child's asthmatic condition, this sum is but a small percentage of plaintiff-father's.
5. For comparative purposes only, using a "one family, no other children, no modification for cause" standard, plaintiff's Child Support Guidelines obligation to family one's children would have been $170 per week, to family two's child, $115 per week. See Appendix IX-C, Pressler, Current N.J.Court Rules. But if plaintiff's obligations are calculated on Appendix IX-E, ¶ (c)(4) criteria (support for children of separated second families), his net support for family one would first be deducted from his current net wages. His residuary net pay would then constitute the base for second family child support obligations, in this instance, an order of $83 would be imposed based on plaintiff's adjusted net wages, $358 ($528 minus $170).

II.
Though support actions are usually advanced, and defended by parents, the real parties in interest before the court are the children. Martinetti v. Hickman, 261 N.J. Super. 508, 619 A.2d 599 (App.Div. 1993). They have a right to a standard of living, of care, of maintenance, commensurate with the collective incomes and best efforts of their parents. N.J.S.A. 2A:34-23; *340 Zazzo v. Zazzo, 245 N.J. Super. 124, 584 A.2d 281 (App.Div. 1990), certif. denied, 126 N.J. 321, 598 A.2d 881 (1991); Walton v. Visgil, 248 N.J. Super. 642, 591 A.2d 1018 (App.Div. 1991); Borzillo v. Borzillo, 259 N.J. Super. 286, 612 A.2d 958 (Ch.Div. 1992). In furtherance of these principles, this court holds that plaintiff's petition for child support reduction is not plaintiff's right per se "because" he is the father of a newly-born son, but is, in effect, an action brought derivatively "on behalf" of his son to fairly share with his brother and sister a portion of his father's income, to be likewise supported by his father.

* * *
In the past, some courts have strictly applied what best could be described as a "first family in time, first family of right" exclusion in which second family obligations, no matter how burdensome, were accorded no consideration. Testut v. Testut, 32 N.J. Super. 95, 107 A.2d 811 (App.Div. 1954). Some have not, holding remarriage, subsequent children as factors to be considered. Padwee v. Padwee, 7 N.J. Super. 101, 72 A.2d 213 (App.Div. 1950).
But today, child support, as that policy is primarily implemented through the Child Support Guidelines, does not substantially differentiate between children born of first or ensuing relationships when modification is an issue or the right to be supported by a common, legally obligated parent is asserted. The current theory, as practiced by our courts, is direct and sound: A child's right to be adequately fed, clothed, housed and educated should not primarily depend on the date of his or her birth, the family in which he or she is born. Equality before the court, the child's right to be nurtured, should never be subject to such a presumptive "time or status" litmus test.
Since our Child Support Guidelines do not specifically provide a pat formula where intact second families seek modification of first family orders, how to implement a fair division of a common parent's income can be a nettlesome task not amenable to mechanical, mathematical certainty or equation. (See Appendix IX-B, *341 IX-C and IX-E, ¶ (c)(4), Pressler, Current N.J.Court Rules, pp. 1676-79, 1682).[3] More often than not  and this case is no exception  second family petitions can raise tension levels severely, and can further polarize the parties: Family one sees such applications as an unfair erosion of their standard of living directly caused by the obligor's unwillingness to recognize that if he cannot support the children of the first relationship, he should have refrained from having more; and family two, primarily the new spouse or paramour, perceives such strident opposition as nothing more than a "cake for you, crumbs for me" response, a contest fought for her and for her child's survival. Ofttimes, as here, there are enough grains of truth to fill many a sack. For first and second family children do, in fact, frequently suffer direct economic, social consequence when there is too little foresight and insufficient income to meet the needs of both.

* * *
Every request for modification of a child support order must demonstrate that changed circumstances exist. Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980). A newly-born child, within a first family relationship or beyond it, is a person not contemplated at the time of the original order for whom provision, and accommodation must be made. Appendix IX-A(5), Pressler, Current *342 N.J.Court Rules, p. 1674.[4] Such review starts the calculation process anew based on all mutual sources of income, Zazzo v. Zazzo, supra; Terry v. Terry, 270 N.J. Super. 105, 636 A.2d 579 (App.Div. 1994), and should also consider:
Whether the obligor seeking the reduction has an ability, the opportunity to earn additional income  and if so, how much  so as to lessen the potential financial impact, the potential hardship, on his first family that such a reduction may cause. What this obligor would probably be required to pay the child/children in each household on a first-family order or pursuant to Appendix IX-E, para. C(4), of the Child Support Guidelines.
Whether the obligor resides with the other second family parent. If so, that parent's earnings, contributions to overhead or obligation to share a greater percentage of such overhead, a greater percentage of everyday expenses of the child, of the household.[5]
Whether the obligee resides with a new spouse, paramour or with others in a residence where the child support presently received is not all utilized, or minimally utilized, for payment of monthly expenses, such as rent or mortgage, taxes, insurance, telephone, utilities or other similar expenses, or for purchasing food and necessities for the child/children.
What the current lifestyle of each family was, now is; to what extent that lifestyle will be affected by a diminution in the current order of support; conversely, as to the second family, absent some adjustment increasing the obligor's income, will *343 their ability to provide an adequate standard of care for the new child be put at risk?
Whether the child/children of either family has/have special medical or other needs.

III.
Plaintiff's assertion that this court is barred from imposing or enforcing a child support order in excess of that which his employer, the United States Air Force, can legally withhold by wage garnishment, is premised on his misapplication, his misunderstanding of the policy served by those laws creating Child Support Guidelines and providing for wage/income withholding.
In requiring each state to enact Child Support Guidelines, Congress clearly intended that within each jurisdiction there would be a uniform application of like income and other relevant economic information used by all judges in the establishment or modification of child support orders. 42 U.S.C.A. § 667; 45 C.F.R. § 305.47 (1985); R. 5:6A. This court can find no statement of national policy that military personnel or other federal employees subject to the wage garnishment process are to be treated preferentially unequal, should be allowed to pay less than non-federal obligors under like circumstance. If Congress had intended such a result, it would have so stated (expressio unius est exclusio alterius: mention of one thing necessarily implies exclusion of all others). International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. ___, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992); In the Matter of K.L.F., 275 N.J. Super. 507, 646 A.2d 532 (Ch.Div. 1993). The purpose, therefore, of the Child Support Guidelines is to set uniform orders premised on relevant economic precepts not subject to the wide variations, the uncertainty of result, that were inherent by-products of past decision-making.
Wage garnishment is the second step in the support process. Its purpose is to guarantee the collection of the alimony or child support set, to assure that those sums which the judge orders will be paid to each spouse and child. See 15 U.S.C.A. § 1673; N.J.S.A. 2A:17-56.9. In those cases, as in this one, where *344 the order imposed exceeds statutory garnishment limits, federal and state policy also permits alternative, additional collection from other assets or sources of income which the obligor may have. In Burstein v. Burstein, 182 N.J. Super. 586, 442 A.2d 1056 (App.Div. 1982), a matter in which support and arrearage exceeded the fifty-five percent federal garnishment maximum, the court held: "Where the obligor has other assets which may be the subject of execution, clearly such execution may proceed simultaneously with a wage execution in order to obtain satisfaction of both the past and current obligation...." Id. at 595, 442 A.2d 1056.
Likewise, while only an employee's W-2 pay is subject to wage garnishment, where military personnel receive other benefits of employment  such as plaintiff's non-taxable BAQ, BAS and VHA allotments  these allotments, in addition to taxable pay, become part of his "disposable earnings" and, if court ordered, are subject to an involuntary allotment proceeding. 42 U.S.C.A. § 665; 32 C.F.R. § 54.6.[6]
*345 In an involuntary allotment proceeding, the net sum of all the employee's income sources is then utilized, the permitted maximum attachment being that percentage otherwise allowed by garnishment.[7] In either process, basic wage garnishment or an involuntary allotment proceeding, if a differential exists between the support ordered versus that permitted to be garnished or attached, and no other income source or asset is available upon which to execute, the arrears accrued are reduced to judgment in accordance with N.J.S.A. 2A:17-56.23a; however, collection of that judgment is delayed until such time as the criteria outlined herein can be met.

IV.
Like all citizens children are constitutionally entitled to the equal protection of the Law, U.S. Const., amend. XIV, § 1, to have legislation, state policy enacted and implemented in ways that are even handed, that affords them equal treatment with similar others. Cf., Greenberg v. Kimmelman, 99 N.J. 552, 562, 568, 494 A.2d 294 (1985) ("The Fourteenth Amendment seeks to protect against injustice and against the unequal treatment of those who should be treated alike....").
In the context of legislation governing child support standards, N.J.S.A. 2A:34-23, and court rules establishing Child Support Guidelines, R. 5:6-A, Appendix IX, Pressler, Current *346 N.J.Court Rules, a claimant of the same class of dependents denied a reasonable opportunity to be adequately supported by a common parent is a citizen denied equal treatment before the law, a child whose welfare is, indeed, compromised and diminished. The application, however, of the Equal Protection Clause to child support as well as to all other legislative and state policies is not rigid or exact. Our courts have held:
Equal protection does not require that all persons must be treated identically, but rather that similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same. Schneider v. City of East Orange, 196 N.J. Super. 587, 594 [483 A.2d 839] (App.Div. 1984). Unless the legislation creates an inherently suspect classification, a legislative classification will be assumed valid, even if it has the effect of treating some differently from others, so long as it bears some rational relationship to a permissible state interest. Ibid.

[State v. Rodriguez, 225 N.J. Super. 466, 471-72, 542 A.2d 966 (Law Div. 1988).]
In this matter, I conclude that plaintiff's infant son has an equal right to support; that such right as state policy is applicable to intact, second family children, and is constitutionally protected against unequal treatment. To advance this right, to safeguard the similar right of his siblings to continued support from the plaintiff, their father, I have evaluated the competing child care needs of each family as presented. In trying to reach an equitable balance, a fair division of modest parental resources, I find especially compelling the infant's medical difficulties, the attendant costs, his mother's required, around the clock attention to his care, making it impractical for her to be re-employed since his birth, further limiting the second family income to support him. Fortunately, Family One's children can look to two parental incomes; their welfare is better sheltered, their needs more readily met and maintained.
For second, intact family children, the Child Support Guidelines do not offer, as indicated, the ease of calculation nor an exact formula. See Appendix IX-C, IX-E, ¶ (c)(4), Pressler, Current N.J.Court Rules, also n. 3, supra. Nonetheless, these do offer a needed point of departure in determining whether or not, under the facts of this case, good cause has been shown to modify the *347 strict application of the Child Support Guidelines, or whether relevant factors are present which may make the Guidelines inapplicable or subject to modification, or whether "injustice would result from [their] application...." Ibid., R. 5:6A.
Having made such calculations, I conclude the interests of justice require a reduction. In so doing, I recognize that any dollars taken from the first family children may pinch to some degree. But I also find that unlike their half-brother, they do not have the crisis of health, shelter and survival unknowingly faced by an infant now living in a family on the economic brink. Based on this court's analysis of the parties' collective needs and income, I order the following modifications: Plaintiff shall pay $132.50 for the support of his two first family children and reimburse defendant fifty percent of her current day care expense, $15 per week.[8] *348 He shall also pay the sum of $20 weekly to accelerate collection of long, overdue arrears, which payment shall be subject at the expiration of one year to further review. In the event that the infant's medical condition improves and there is no longer substantial out-of-pocket expense, the court will consider a request to increase the amount of payment on arrears at that time.[9]

* * *
Justice also requires, to the extent possible, that plaintiff's first family children be relieved of their status as child support creditor, a function they now fill because 15 U.S.C.A. § 1673(b)(2)(A) limits the execution payable in like cases to fifty-five percent of plaintiff's net wages. The federal involuntary allotment procedure is an appropriate remedy to void that role. I so order. Accordingly, the U.S. Department of Air Force is directed to initiate such process, to recalculate the amount of child support and arrears that can be withheld from plaintiff's wages and allotments. The U.S. Department of Air Force is further directed, on behalf of this court, pursuant to 42 U.S.C.A. § 665, to amend the present income execution, forwarding to the Gloucester County Probation Office, after the involuntary allotment procedure is concluded, the maximum payment permitted by law not in excess of $167.50 per week, the amount ordered herein. To facilitate payment and collection, monthly payments may continue, that sum being $720.25.
Counsel for defendant shall prepare an order consistent with this opinion and upon execution distribute a conformed copy to all appropriate persons and agencies. A certification of such service shall be filed. Upon receipt of the court's order, the Gloucester *349 County Probation Office shall make the required adjustments to plaintiff's account.[10]
NOTES
[1] 15 U.S.C.A. § 1673(b)(2)(A) provides that where arrears exist for twelve weeks or more, the aggregate garnishment of child support and arrears can be increased by five percent (50% to 55%; 60% to 65%).
[2] "Disposable income" is defined for purpose of garnishment as follows:

A federal employee or military member's pay subject to garnishment includes wages, salary, bonuses, incentive pay, retired pay, or disability retirement pay. Excluded from this amount are debts owed the United States; Federal, State, and local income tax withholdings; Social Security withholdings (FICA): deductions for health insurance premiums; fines and forfeitures ordered by a court-martial; amounts paid for the Retired Servicemen's Family Protection Plan, and the Survivor Benefit Plan.
[See 42 U.S.C. § 662(g).]
[3] In calculating child support due by an obligor to a second family with whom the obligor does not reside, the Child Support Guidelines have adopted, for ease of computation, what could be described as a "first party encumbrance on obligor's income" approach. See Child Support Guidelines, Appendix IX-E, ¶ C(4), Pressler, Current N.J.Court Rules, p. 1682. Because two different net incomes are used, this obviously creates some disparity between the two orders and an inherent policy tilt towards the first family. Whether such an approach is consistent with constitutional Equal Protection latitude to treat some of the same class differently from others so long as that difference bears some rational relationship to a permissible state interest  in this case  support for children (cf. Schneider v. City of East Orange, 196 N.J. Super. 587, 594, 483 A.2d 839 (App.Div. 1984); State v. Rodriguez, 225 N.J. Super. 466, 471, 542 A.2d 966 (Law Div. 1988)) or whether upon proper application and joinder of all relevant parties, a second family child has a right to revisit this policy, to somewhat balance the two orders, is not an issue in this case and therefore not addressed.
[4] An obligor's right to seek modification of a prior child support order where changed circumstances exist  i.e., support of a second family child  is consistent with ¶ 5 of Appendix IX-A of the Child Support Guidelines, CONSIDERATION IN THE USE OF CHILD SUPPORT GUIDELINES, which states as follows:

(5) Modifications. Before using these guidelines to modify prior existing child support orders, a determination must first be made that changed circumstances exist which justify a change in the current child support order (see Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980)). In applying the guidelines in modification actions, the court shall consider the interrelationship of alimony and other financial factors that may have influenced the original child support amount.
[Id. at 1674.]
[5] The Child Support Guidelines assume a financial contribution of both obligor and obligee. The Guidelines are predicated on an "income share basis" and also assume a household overhead component. That overhead component may or may not be a factor if others pay all or a part of such expenses in the household in which the obligor or obligee resides. For a more extensive discussion, see the comments to R. 5:6A, Child Support Guidelines, Pressler, Current N.J.Court Rules, at 1442-1443.
[6] The federal regulations implementing the allotment process pursuant to the Code of Federal Regulations defines "disposable earnings" as:

Disposable Earnings. (1) In determining disposable earnings for a member assigned within the contiguous United States, include the following payments. For definitions of these items, see DoD 5000.12-M. (i) Basic pay (including Military Service academy cadet and midshipman pay). (ii) Basic allowance for quarters for members with dependents, and for members without dependents in grade E-7 or higher. (iii) Basic allowance for subsistence for commissioned and warrant officers. (iv) Special pay for physicians, dentists, optometrists & veterinarians. (v) Submarine pay. (vi) Flying pay (all crew members). (vii) Diving pay. (viii) Proficiency pay or special duty assignment pay. (ix) Career sea pay. (2) To determine disposable earnings for a member assigned outside of the contiguous United States, the following shall supplement the payments listed in paragraph (b)(1) of this section: (i) Foreign duty pay. (ii) Special pay for duty subject to hostile fire (applies only to members permanently assigned in a designated area). (iii) Family separation allowances (only under certain type-II conditions). (iv) Special pay for overseas extensions. (c) Calculations of disposable earnings shall exclude: (1) Amounts owed by the member to the United States. (2) Amounts mandatorily withheld for the U.S. Soldiers' and Airmen's Home. (3) Fines and forfeitures ordered by a court-martial or by a commanding officer. (4) Federal and State employment and income taxes withheld to the extent that the amount deducted is consistent with the member's tax liability. (5) Deductions for the Servicemen's Group Life Insurance Coverage. (6) Advances of pay received by the member before receipt of notice (see paragraph (c)(1) of this section) that may be due and payable by the member at some future date. Requests for advances received after notice for a statutorily required support allotment shall be reduced by the amount of the statutorily required support allotment. (7) Other amounts required by law to be deducted."
[32 CFR § 54.6(b) and (c).]
[7] "Enforcing Child and Spousal Support Obligations of Military Personnel," an article by Captain Terrance D. Brown, 6 Cal.Law 49 (August 1986) provides a "How To" guide for courts and practitioners on securing processing and enforcement of civil orders by the military.
[8] As all Family Court Judges know, establishing an appropriate child support order, even when aided by the presumptive certainty of Child Support Guidelines, is not an exact science, a more difficult labor in matters such as this one. Utilizing the Guidelines, however, helps set parameters: In this case, an $888 net (528 plaintiff, $360 defendant) was presumptively available. Using Appendix IX-C, the range of support would have been $270 to $298 for two children. Given the ages of the first family children, the court selected $289, making plaintiff's obligation fifty-nine percent or $170, the defendant's share forty-one percent or $119. Applying the same criteria to the second family infant, the net wages available would have been $538 since no income was attributed to plaintiff's current spouse due to her inability to be reemployed at this time. The resulting order would thus be $115. When similar extrapolations were made using IX-E, ¶ (c)(4) criteria ($528 minus $170 = $358 as plaintiff's net wages), $83 would have been the order entered, which in no way accounts for the $30 in extraordinary weekly medical/pharmacy costs now incurred by the second family. Weighing the parties' respective equities, their respective needs, a $40 first family modification seemed appropriate, that being equivalent to a fourteen percent reduction of total available support ($289); for the second family, a drop from $115 to $83 represented a twenty-eight percent reduction. It was clear to me, as the finder of fact, that at the very least covering the medical/pharmacy expenses was a child welfare imperative, the $30 cost coincidentally being the approximate dollar difference based on basis Table IX-C and IX-E, ¶ (c)(4) computations. As a matter of fundamental fairness, the court required the plaintiff/father to share some of the modest $20 per month extra medical costs incurred by defendant ($2.50 per week). Likewise, in view of defendant's apparent willingness to continue to accept $150 per week in child support, this ruling, in effect, only reduces child support by $17.50.
[9] The involuntary allotment process cannot be utilized unless the obligor is at least two months in arrears. 42 U.S.C.A. § 665.
[10] Based on the updated income information, the court, utilizing the standards and rationale expressed in this opinion, has adjusted the interim child support order from $120 to $126 per week, allowed plaintiff a day care credit against his prior obligation of $27.50 to coincide with the overall reduction in day care expenditures now at $30 per week, his share being $15. The effective date of the adjustment, consistent with N.J.S.A. 2A:17-56.23a, is determined to be August 24, 1994.