# IN THE COURT OF APPEALS OF IOWA

No. 13-2079
Filed January 28, 2015

**STATE OF IOWA ex rel. ANNE BENSON,**
**n/k/a ANNE SCHWILLING,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**DONALD JAGER JR., deceased, Assigned**
**to DUSTIN REID JAGER**
**and NATHAN ALAN JAGER,**
        Defendants-Appellants/Cross-Appellees.
_____


        Appeal from the Iowa District Court for Pottawattamie County, Timothy

O'Grady (March 13, 2013 hearing) and Jeffrey L. Larson (May 2, 2013 hearing),

Judges.


        The adult children of a child support obligor appeal the district court's

ruling establishing payment of arrearages from obligor's social security disability

benefits.  Obligor cross-appeals the denial of her motion to quash.  **AFFIRMED**

**ON APPEAL, MODIFIED ON CROSS-APPEAL.**


        A. W. Tauke of Porter, Tauke & Ebke, Council Bluffs, for appellants.

        Joseph G. Basque of Iowa Legal Aid, Council Bluffs, for appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

Dustin and Nathan Jager (the Jagers) are the adult children of Anne Benson, now known as Anne Schwilling, and Donald Jager Jr.[1] Schwilling had a child support obligation imposed upon her and incurred a significant delinquency. The Jagers, now adults, were assigned their father's right to any unpaid child support as well as any interest on the delinquent obligation. Schwilling filed a motion to quash the garnishment of her social security disability checks for child support arrearages. Schwilling's motion sought to reduce the garnishment against her social security disability payments. The issue raises the additional question whether child support payments should first be applied to child support or to the interest accrued on an unpaid delinquency. The Jagers appeal the district court's ruling that payments made on delinquent child support are credited first to support and then to accrued interest. Schwilling cross-appeals the district court's denial of her hardship-based motion to reduce the amount garnished. We affirm on the appeal; we modify on the cross-appeal.

**I. Background Facts and Proceedings.**

The Jagers were born in May 8, 1987, to unmarried parents. The State of Iowa filed an action to establish child support and, on September 19, 1989, the district court ordered Donald to pay $275 per month ($3300 annually) in child support on behalf of the twins.

On July 22, 1991, an order modifying custody and support was entered. Donald was granted physical care of twins, and Schwilling was ordered to pay

---

[1] Donald died in 2009, and his rights to back support have been assigned to the sons by an order in probate court.

$275 per month in child support through the clerk of court beginning on September 1, 1991.[2] Ultimately, she would be responsible for 165 months of support before the children reached age eighteen or a total of $45,375.

Donald filed for collection services with the Child Support Recovery Unit (CSRU) on May 24, 1995. On July 19, 1995, the CSRU obtained an order for mandatory income withholding, indicating Schwilling had a support delinquency of $12,650 as of June 30, 1995, and requiring that $275 per month be withheld for Schwilling's current monthly support obligation and $137.50 per month be withheld on her delinquent support.

Payments in the amount of $5649.18 were collected from Schwilling by the Collection Services Center (CSC) between 1996 and 2001.

Schwilling has not worked since 2000. She began receiving social security disability benefits at some point in 2001 or 2002. The Jagers acknowledge their father received social security benefits for the boys for the years 2002 through 2005.

On October 24, 2002, the CSRU obtained a new withholding order—no money was to be withheld for current support, and $55 per month was to be withheld for delinquent support. The withholding order states, "The amount due is in excess of $26,800.82 as of 10/23/02. This amount does not include any interest which may have accrued." The CSC recorded one payment of $55 in December 2002 credited to Schwilling.

---

[2] Donald was then delinquent in his child support payments. He satisfied that judgment in April 1993.

On January 2, 2003, the CSRU filed a petition for modification of Schwilling's child support obligation, alleging a substantial change of circumstances existed because she was receiving social security disability benefits and the twins were receiving benefits under her claim. Donald filed a motion with the court to dismiss the petition. Donald then requested the closure of his child support enforcement case with the CSRU, after which, on February 19, 2003, the CSRU dismissed its modification petition without prejudice.[3] Consequently, Schwilling's child support remained set at $275 per month.

The CSC recorded twelve payments of $55 in 2003 (12 x $55 = $660).

In 2004, the CSC recorded eleven payments of $55 for January through November (11 x $55 = $605). Donald filed a motion asking to increase withholding from Schwilling's social security disability benefits in 2004. On September 14, 2004, the district court filed an order noting Schwilling owed back child support "of over $26,800.00 as of September 1, 2004." The court ruled Donald was "entitled to receive delinquent support payments greater than $55.00 per month" and that the court "has authority to increase income withholding pursuant to Chapter 252D of the Iowa Code and 15 USC paragraph 1673(b)(2)(a)." The order required fifty percent of Schwilling's disability benefits be withheld for current and back support. According to CSC payment records, as of December 2, 2004, one payment of $372.60 was made.

---

[3] All court notices were sent to Schwilling's last known address in Iowa. However, she had moved to Kansas. This record does not allow us to determine if Schwilling received these filings.

In 2005, twelve payments of $382.70 were received by the CSC (12 x $382.70 = $4592.40)

Dustin and Nathan turned eighteen years old on May 8, 2005, ending Schwilling's ongoing child support obligation.

Schwilling's disability checks continued to be subject to garnishment— withholding increased to $398.00 per month from 2006 through 2009. CSC recorded thirty-seven monthly payments in that amount and one unexplained payment of $328.20 (47 x $398 = $18,706 + 328.20 = $19,034.20).

Donald died on April 15, 2009. The probate court entered an order assigning Dustin as payee for the back support payments for him and Nathan.

On December 18, 2009, Schwilling attended an informal conference with the CSRU concerning her renewed request for hardship consideration. Notice was sent to her stating she qualified for hardship and the withholding order would be amended. On December 30, Schwilling received notice from the Social Security Administration (SSA) informing her that her withholding would be reduced to $70.60 per month.

The CSC recorded payments of $70.60 in January, February, and March 2010 (3 x $70.60 = $211.80).

On March 30, 2010, Schwilling was informed by letter from the SSA that they had been ordered to "take $275 from each monthly payment you are due to pay your obligation for child support and/or alimony."

The CSC recorded payments of $275 in April, May, and June 2010 (3 x $275 = $825).

On July 10, 2010, Schwilling was informed by letter from the SSA that withholding would be increased: "You will receive $445.00 [per month]. . . . We will withhold $445.00 from your benefit each month to pay your obligation for child support and/or alimony."

On October 4, 2010, Schwilling filed a motion to quash, asserting CSRU "indicates that the back child support in this matter has either been entirely paid off or is almost entirely paid off" and that pursuant to Iowa Administrative Code rule 441-98.24(1), garnishment should be limited to twenty percent of her disability check. The motion was denied after a hearing.

Withholding of Schwilling's disability benefits remained at $445 per month through December 21, 2012. The CSC recorded monthly payments of $445 from July 2010 through January 2013 (30 x $445 = $13,350). At this point, Schwilling had paid $45,355 on her support obligation, $20 shy of the total due.

On February 7, 2013, Schwilling filed a new motion to quash, asserting back child support had been paid off as of February 2013. She also asserted the CSC does not calculate the interest owed on a child support obligation and the CSC would continue to garnish her disability benefits until otherwise ordered by the court. She requested the court calculate the interest owing and reconsider the amount to be garnished from her. The Jagers resisted, claiming the balance of child support and accrued interest still owed by Schwilling was $63,779.99.

A hearing was held on February 25, 2013. Counsel for Schwilling, the Jagers, and the CSRU appeared. On March 13, the district court entered an order, explaining:

Anne moved to quash the garnishment against her Social Security Disability benefits. Anne noted that under the garnishment order, $445 per month is deducted from her Social Security Disability benefits . . . . She notes that Donald is deceased and Nathan and Dustin are adults. There is no current child support obligation; the entire balance of the judgment against her is the delinquency plus interest that has accrued. In her motion, Anne asked for an accounting of the balance owed under the judgment and specifically the interest calculation. Anne noted that [rule] 441-98.24 of the Iowa Administrative Code allows for reduced enforcement of a support arrearage if certain hardship criteria are met—such as qualifying for Social Security Disability benefits.

Dustin and Nathan resisted Anne's motion. They note that judgments for child support have priority for enforcement. They note that Anne failed to provide child support for them during much of their minority. They argue that they used a conservative method to calculate interest accruing on the judgment. They note that the CSRU is only involved as a collection entity and that it is not actively enforcing the judgment and therefore the withholding guidelines found in the Iowa Administrative Code [rule] 441-98.24(252D) do not apply. Nathan and Dustin argue that if the current re-payment rate is reduced by much, the monthly payments will be lower than the amount of interest that accrues each month.

Iowa gives priority to collection of child support judgments from the responsible parent on behalf of dependent children. Even after the death of the obligor, payment of a child support debt has priority over payment of other debts. [Iowa Code section] 633.425. A long-standing principle of Iowa law prohibits modification of past-due child support payments. *In re Marriage of Griffey*, 629 N.W.2d 832 (Iowa 2001). After assignment of the right to receive child support to the state in order to receive public assistance, the obligation is still considered a support debt. [Iowa Code] § 252C.2. The purpose of [section] 252C.2 is to allow the State to assert the same priorities when collecting a support debt that a parent could assert. *Shepherd v. Shepherd*, 467 N. W.2d 237 (Iowa 1991). If dependent benefits are paid for a child as a result of disability benefits awarded to the child's parent under the federal Social Security Act, dependent benefits paid to the child support obligee as a result of disability benefits awarded to the child support obligor fully satisfy and substitute for the support obligations for the same period of time for which the benefits are awarded. [Iowa Code] § 598.22C.

Nathan and Dustin seem to want to have it both ways. They claim all of the priorities and protections that a judgment for delinquent child support should receive. They also claim all of the enforcement mechanisms of any civil judgment, without the ameliorations provided to the debtor in [Iowa Code section] 642.21,

[Iowa Administrative Code rule] 441-98.24, or 15 U.S.C. § 1673. There is no current support owed. The children to be supported are in their twenties. The parent entitled to receive the support has been deceased for nearly four years. The current holders of the judgment own the right to collect through inheritance. The bulk of the balance owed consists of interest.

Substantial equities work against Anne—she failed to support her children over many years. Nevertheless she is presently disabled and living on Social Security Disability benefits. Anne did not receive proper credit against her support debt under [section] 598.22C for the benefits Nathan and Dustin received because of her disability status. [Section] 252C.2 was passed to maintain the support debt status for a child support judgment after it was assigned to the State. This judgment is not held by the obligee parent.

A wage withholding order or a wage assignment for child support is considered a garnishment within the meaning of 15 U.S.C. § 1672(c); *Koethe v. Johnson*, 328 N.W.2d 293 (Iowa 1982). A maximum allowable garnishment has been established by the Federal Consumer Protection Act. 15 U.S.C. §§ 1671–1677. The Federal limits have been supplemented in Iowa, which has adopted its own exemptions from garnishment. [Iowa Code] § 642.21.

An obligor may move to quash an income withholding order or a notice of income withholding by filing a motion to quash with the clerk of court. Grounds for contesting a withholding order include a mistake of fact, which for purposes of this chapter means an error in the amount withheld or the amount of the withholding or the identity of the obligor. [*Id.*] § 252D.31. Upon application, a hearing shall be held to determine the reasonably expected annual earnings of the judgment debtor, the amount of disposable earnings exempt from execution, and whether the interests of justice require a greater exemption than allowed by [Iowa Code section] 642.21. *See* [*Id.*] § 630.3A. The list of grounds for contesting a withholding order in [section] 252D.31 are inclusive rather than exhaustive.

Anne is entitled to a hearing to determine the amount of her annual income and disposable income for purposes of applying 15 U.S.C. § 1673 and Iowa Code section 642.21. At that hearing a determination should be made of what portion of Anne's disposable income is exempt from garnishment, and how much of her disposable income should be applied to the judgment held by Nathan and Dustin.

Another hearing was held on May 2, 2013. Anne testified she is fifty-six years old. She has been diagnosed with Meniere's disease and severe depression and has been receiving social security disability benefits since 2001

or 2002. Her income is limited to her disability benefits of $11,256 per year. After the garnishment for past support, she receives $493 per month. Her monthly expenses include $148 per month in rent (living in Section 8 housing), $150 per month in car payments (which she believed would end in October), $40 per month for car insurance, $39.80 for medications, and $73 per month for utilities (totaling $450.80). Anne testified she receives $200 per month in food stamps. She testified she usually borrows about $100 per month from an adult daughter.

On July 1, 2013, the district court rejected the Jagers' contention that payments on past due child support be applied in the same manner as a "normal bank loan would with a percentage of each payment going to principal and interest." The court concluded "payments by Schwilling should be applied first to back support and subsequently to interest." The court then denied Schwilling's motion to quash the garnishment of her disability benefits. The court ordered "the back child support Schwilling owes is $18,091.96 as of April 2013."

On July 12, the Jagers filed a motion for enlargement of findings of fact and conclusions of law requesting clarification of the $18,091.96 figure: "The amount seems to be taken from Exhibit 2 submitted by [Schwilling]. This calculation does not show what that amount means. Is it principal with interest still accruing? If it is without interest is that a violation of chapter 535.3 of the code?" Schwilling resisted.

On December 5, 2013, the court wrote, in part: "[A]fter applying the back child support payments to the principal first, this court found that all back child

support principal had been paid and only $18,091.96 in back child support interest remained due, as of April 2013."

The Jagers appeal, contending the district court erred in ruling payments made on child support arrearages should first be applied to support and then to interest. Schwilling cross-appeals, arguing the court improperly denied her motion to quash.

## II. Scope and Standard of Review.

This is an equity action, which we review de novo. Iowa R. App. P. 6.907. "We examine the whole record, adjudicating anew rights on the properly presented issues." *Kufer v. Carson*, 230 N.W.2d 500, 503 (Iowa 1975). We give weight to, but are not bound by, the findings of the trial court. Iowa R. App. P. 6.904(3)(g).

## III. Discussion.

*A. Timeliness of appeal.* Schwilling asserts this court is without jurisdiction because the notice of appeal was filed more than thirty days after the court's July 3, 2013 order and the Jagers' motion to enlarge findings of fact and conclusions of law did not extend the time to appeal.

Iowa Rule of Appellate Procedure 6.101(1) provides that a notice of appeal must ordinarily be filed within thirty days of the filing of the district court's final order or judgment. Iowa R. App. P. 6.101(1)(b). In the event a party files a timely motion under Iowa Rule of Civil Procedure 1.904(2), however, rule 6.101 authorizes the filing of a notice of appeal within thirty days of the filing of the district court's ruling on the rule 1.904(2) motion. *Id.* Our supreme court has explained that a failure to file a timely notice of appeal leaves us without subject

matter jurisdiction to hear the appeal. *Root v. Toney*, 841 N.W.2d 83, 87 (Iowa 2014); *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 771 (Iowa 2009).

Schwilling asserts that the Jagers' motion to enlarge was "no more than a rehash of legal issues" and did not constitute a proper rule 1.904(2) motion, which would extend the time for filing a notice of appeal. In *Baur v. Baur Farms, Inc.*, 832 N.W.2d 663, 668-69 (Iowa 2013), our supreme court explained:

> Rule 1.904(2) provides that the "findings and conclusions" of the district court may be enlarged or amended and the judgment or decree modified accordingly "[o]n motion with or filed within the time allowed for a motion for new trial." Iowa R. Civ. P. 1.904(2). We have explained that a motion to enlarge or amend is available only to address rulings on factual issues tried without a jury and that any legal issues raised in the motion must have been addressed in the context of an issue of fact tried by the court without a jury. *See Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002). When a rule 1.904(2) motion amounts to nothing more than a rehash of legal issues previously raised, we will conclude the motion does not toll the time for appeal. *Explore Info. Servs. v. Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001). By contrast, when used to obtain a ruling on an issue that the court may have overlooked, or to request the district court enlarge or amend its findings when it fails to comply with rule 1.904(1),[4] the motion is proper and will toll the time for appeal. *See In re Marriage of Okland*, 699 N.W.2d 260, 266–67 (Iowa 2005).

Here, the district court ruled payments by Schwilling first should be applied to back support and then to interest. It then rejected Schwilling's request that the garnishment of her social security check should be reduced, finding she "has been effectively . . . paying the arrearages off with the current withholding order and that will remain unchanged."

---

[4] Iowa Rule of Civil Procedure 1.904(1) provides:
> The court trying an issue of fact without a jury, whether by equitable or ordinary proceedings, shall find the facts in writing, separately stating its conclusions of law, and direct an appropriate judgment. No request for findings is necessary for purposes of review. Findings of a master shall be deemed those of the court to the extent it adopts them.

In their motion to enlarge, the Jagers asked the court to "rule that under chapter 535.3 a person obligated to pay on a judgment is required to pay interest first." Had this been the only issue raised in the motion we would have to conclude the motion was simply "a rehash" of the legal issue previously addressed and the motion would not have tolled the time to appeal. *See Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 905 (Iowa 1998).

However, the Jagers also asked that the court enlarge its findings as to whether the amount owed—which the court stated was $18,091.96—was principal or interest and whether interest was "still accruing." The district court entered an order on December 5, 2013, explaining "the Court found that all back support principal had been paid and only $18,091.96 in back child support interest remained due, as of April 2013." We conclude the Jagers' motion to enlarge the district court's findings thus extended the time to appeal to thirty days after the court's December 5, 2013 ruling on the motion. The notice of appeal was timely filed on December 26.

*B. Payments on arrearages*. The Jagers argue that when partial payments are made, under the "United States Rule" they are allocated first toward interest due.[5] However, this is not the approach enunciated by the

---

[5] We acknowledge that in *Gail v. W. Convenience Stores*, 434 N.W.2d 862, 864 (Iowa 1989), our supreme court stated:

> We have long adhered to what is known as the United States Rule regarding computation of interest when payment is made toward retiring a judgment. *See*, *Smith, Twogood & Co. v. Coopers & Clarke*, 9 Iowa 376, 387 (1859). The rule seems to enjoy general application. 47 C.J.S. *Interest and Usury*, § 74 at 164 (1982); 45 Am.Jur.2d *Interest and Usury*, § 99 at 88 (1986). When partial payments are made they are allocated first toward the interest due. Any payment which exceeds the interest due is applied toward the judgment principal. Subsequent interest is to be computed on the remaining principal.

Jagers to the district court—where they submitted calculations that allocated *part* of the payments to support and *part* to interest, with no explanation or legal support for their chosen allocation. This present claim is not properly before us. *See Meier*, 641 N.W.2d at 537 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Even presuming this approach was properly raised below, there are several reasons the United States Rule, generally applied to judgments, is not applicable here. Schwilling was delinquent in her support payments. In 1995 Donald sought collection services through the CSRU. The CSRU obtained an income withholding order pursuant to Iowa Code chapter 252D (1995), which allows income withholding for delinquent support payments.[6]

Pursuant to section 252D.8, "[t]he income of the obligor is subject to immediate withholding unless" a statutory exemption exists. "This statute *assures that the obligor's minor children will receive the decreed support* and

---

*See also Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 261-62 (Iowa 1996) ("In *Gail*, 434 N.W.2d at 864, we affirmed our adherence to the United States rule regarding allocation of interest when payment is made toward retiring a judgment."). However, the court has never applied the rule to delinquent child support obligations.

[6] In 1997, the legislature added a definitional provision, section 252D.16(3):

> "Support" or "support payments" means any amount which the court or administrative agency may require a person to pay for the *benefit of a child* under a temporary order or a final judgment or decree entered under chapter 232, 234, 252A, 252C, 252F, 252H, 598, 600B, or any other comparable chapter, and may include child support, maintenance, medical support as defined in chapter 252E, spousal support, and any other term used to describe these obligations. . . . The obligations may include support for a child eighteen or more years of age with respect to whom a child support order has been issued pursuant to the laws of a foreign jurisdiction. These obligations shall not include amounts for a postsecondary education subsidy as defined in section 598.1.

(Emphasis added.)

there is no opportunity for the obligor . . . to escape [her] legal and moral obligation to support [her] dependents." *In re Marriage of DeNuys*, 543 N.W.2d 894, 896 (Iowa 1996) (emphasis added). "[T]he legislature enacted section 252D.8 to ensure that a child deprived of an intact family will not be deprived of financial support until emancipated or until reaching the age of majority." *Id.* at 897. Because of the importance the legislature has placed on support of minor dependents,[7] under both state and federal legislation, income withholding can reach normally exempt earnings—such as disability benefits—for child support. *See id.* at 898. Section 252D.18(3) then authorizes the court or the CSRU to terminate an income withholding order "*when the current support obligation has terminated and when the delinquent support obligation has been fully satisfied* as applicable to all of the children covered by the income withholding order." (Emphasis added.)

Reading these provisions leads to the conclusion that any income withheld from the obligor parent must first be allocated to current support obligations, then to delinquent support obligations. *Cf. Broyles v. Iowa Dep't of Soc. Servs*., 305 N.W.2d 718, 722 (Iowa 1981) (discussing comparable rule and noting while not "directly applicable" "it defines the manner in which the Department treats current and delinquent support payments, and it is grounded upon sound public policy"). This reading is consistent with Iowa Administrative Code rule 441-98.24, which governs the CSRU's determination of a withholding amount. Rule 441-98.24(1) states: "When a current support obligation exists, the amount withheld shall be

---

[7] "We have stated that '[t]here is powerful proof . . . that the legislature places the highest priority on a child's right to receive parental support." *DuNuys*, 543 N.W.2d at 897 (quoting *In re Marriage of McMorrow*, 342 N.W.2d 73, 76 (Iowa 1983)).

an amount equal to the current support obligation, and an additional amount equal to 50 percent of the current support obligation to be applied toward the liquidation of any delinquency."  Rule 441-98.24(2) provides that "[w]hen the current support obligation has ended or has been suspended, the income withholding order shall remain in effect until any delinquency has been satisfied.  The amount withheld shall be equal to the amount of the most recent prior current support obligation which is greater than zero."

The Jagers maintain the CSRU is no longer a party and thus the administrative rules do not apply.  Even if we would ignore the administrative rules, we would come to the same conclusion.  The payments received since Donald sought the CSRU's dismissal from the proceedings in 2004 were obtained by garnishment.  *See generally In re Marriage of Eklofe*, 586 N.W.2d 357, 359-60 (Iowa 1998) (discussing chapter 642 garnishment).  If the amounts garnished were to have been applied to interest—as the Jagers contend—the garnishment would not have qualified for the lesser exemption upon which the garnished amounts were obtained.  Generally, garnishment of earnings cannot exceed twenty-five percent of aggregate disposable earnings or "the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable," whichever is less.  15 U.S.C. § 1673(a); Iowa Code § 642.21(1) (2013) ("The disposable earnings of an individual are exempt from garnishment to the extent provided by the federal Consumer Credit Protection Act, Tit. III, 15 U.S.C. §§ 1671-1677.").  However, the restrictions on garnishments do not apply "in the case of any order for the *support* of any person

issued by a court." 15 U.S.C. § 1673(b)(1)(a) (emphasis added). Fifty percent of Schwilling's earnings have been garnished since 2005 pursuant to this support exemption. *See id.*; *see also Burstein v. Burstein*, 442 A.2d 1056, 1061 (N.J. Super. App. Div. 1982) (discussing 15 U.S.C. § 1673(b) and stating, "[c]urrent support should be paid first and, if there is a difference remaining between current support and garnishable wages, the difference may be allocated to arrearages"). Schwilling's claims of hardship were rejected on the basis that the amounts owed were for child support. *See* Iowa Code § 642.24.[8] We decline to apply the payments differently now when the Jagers have benefited from garnishment rules applicable to child support. *Cf. State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 247 (Iowa 1998) (discussing twenty-year statute of limitations and concluding payments made by the child support obligor should be applied to the oldest unpaid periodic support payment not already barred by the statute of limitations at the time the payment is tendered as it was "the most equitable approach").

*C. Motion to quash.* On cross-appeal, Schwilling contends the district court erred in denying her motion to quash the garnishment of her disability benefits. She asserts Iowa courts have broad jurisdiction to conduct evidentiary hearings

---

[8] Section 642.24 reads:

> The court shall include in any order for garnishment a requirement that *any amount garnisheed for the payment of a support obligation*, whether or not the amount represents a current or delinquent support obligation, shall first be paid out of the garnisheed funds, after subtracting applicable fees related to the issuance of the specific garnishment, before any amounts garnisheed for other purposes are paid out of the garnisheed funds.

(Emphasis added.)

regarding motions to quash garnishments pursuant to 15 U.S.C. § 1673 and Iowa Code section 642.21.  We agree.

We have rejected the Jagers' claim that Schwilling's payments were to have been applied first to interest.  Based on this same principle, the district court found that "all back child support principal had been paid and only $18,091.96 in back child support interest remained due, as of April 2013."[9]  Because all back child support is paid, the earnings exemption upon which the Jagers were able to garnish fifty percent of Schwilling's disability benefits is no longer applicable.  *See* 15 U.S.C. § 1673(b).  The district court erred in denying Schwilling's motion to quash.

Schwilling relies upon administrative rules pertaining to income withholding of child support, which would allow a reduction of the withholding if she proves "hardship."[10]  The Jagers again contend the CSRU is not involved so administrative rules do not apply.  We need not address these rules as, pursuant to section 252D.18(3), this court would terminate any income withholding sua sponte because "current support obligation has terminated and . . . the delinquent support obligation has been fully satisfied."[11]

---

[9] The Jagers had submitted an exhibit at the May 2, 2013 hearing that did not include their earlier claim for $11,275 in child support during the months they also were receiving social security disability benefit payments (2002-2005), along with related interest. Schwilling submitted Exhibit 2 at the hearing, which is a chart based on this apparent concession.  On appeal, the Jagers do not challenge the district court's findings other than to claim payments should have been applied first to interest owing.

[10] "Hardship exists if the obligor's income is 200 percent or less than poverty level for one person as defined by the United States Office of Management and Budget and revised annually in accordance with Section 673(2) of the Omnibus Budget Reconciliation Act of 1981."  Iowa Admin. Code r. 441-98.24(1)(a).

[11] They also argue the issue was not preserved because Schwilling did not file a motion to enlarge.  The issues, including the application of administrative hardship rules, were clearly raised in the district court.

Because what is remaining due is not "support," *see* Iowa Code § 252D.16(3), any garnishment of Schwilling's disability benefits is now subject to the limitations and exemptions noted in Iowa Code section 642.21 and 15 U.S.C. § 1673.

"Generally, the maximum amount of aggregate disposable earnings of an individual for any workweek subject to garnishment may not exceed twenty-five percent of the disposable earnings for that week. 15 U.S.C. § 1673(a)." *Eklofe*, 586 N.W.2d at 359.

> Iowa adopts the federal pay period restrictions. However, *it provides additional protections* for debtors by further restricting the maximum amount of earnings which may be garnished in each calendar year. Generally, the total amount of earnings any one creditor may garnish in any calendar year is governed by a sliding scale. The scale is based upon the amount of earnings a debtor expects to receive in the year. Iowa Code § 642.21. The threshold amount of wages available for garnishment is $250 for debtors who expect to earn less than $12,000 annually and increases up to a maximum level of ten percent of earnings for employees who expect to earn $50,000 or more each year. *Id.*

*Id.* at 360 (emphasis added, footnotes omitted). Schwilling's earnings are limited to her social security disability benefits ($993 x 12 = $11,916). Pursuant to section 642.21(1), the "maximum amount" of her earnings "which may be garnished during any one calendar year is two hundred fifty dollars for each judgment creditor." The Jagers were assigned Donald's right to collect by assignment in the probate court. *See Broyles*, 305 N.W.2d at 723 ("In a valid assignment of a judgment the assignee assumes the rights, remedies, and benefits of the assignor."). We conclude the maximum they may garnish per year is $250, and further, the "maximum amount of aggregate disposable earnings of an individual for any workweek subject to garnishment may not

exceed twenty-five percent of the disposable earnings for that week.  15 U.S.C. § 1673(a)."  *Eklofe*, 586 N.W.2d at 359.

Costs on appeal are taxed to the Jagers.

**AFFIRMED ON APPEAL; MODIFIED ON CROSS-APPEAL.**